HENRY D. HUFF

*v.*

THE WINONA & ST. PETER RAILROAD COMPANY.

The act of the legislature, approved March 10, A. D. 1862, entitled "An act
to facilitate the construction of a railroad from Winona westerly by the way of
St. Peter," did not revive the Transit Railroad Company, or continue or re-
grant to it the property or franchises which it had forfeited to the State.

This action was commenced in the District Court for Winona
county. The allegations of the complaint are substantially as
follows: That the Territory of Minnesota, by an act of its
Legislature, incorporated the Transit Railroad Company, giv-
ing said company the rights and franchises usually given to
such corporations, including the right and power to contract
debts, to sue and be sued; that the right to amend and modify
said act was reserved to the State; "that the State of Minne-
sota, by an act of its Legislature, entitled 'An act to facilitate
the construction of a railroad from Winona westerly by the
way of St. Peter,' approved March 10, 1862, continued all the
rights and franchises which had been granted to and enjoyed
by the said company, under the name of the Transit Railroad
Company, to be further had and enjoyed by said company,
under the name of the Winona and St. Peter Railroad Com-
pany.

"That the defendant, under the name and style of the
Transit Railroad Company, on the 29th day of March, 1858,
by its bond duly executed, bound itself well and truly to pay,
or cause to be paid, unto the plaintiff, his representatives or
assigns, the sum of nineteen thousand five hundred dollars, on
or before the third day of April, 1859, with interest," etc.,
which allegations are followed by the breach, and demand for
judgment.

The answer admits the incorporation of the Transit Railroad Company, denies that the State, by the act of March 10, 1862, or by any act, continued the rights and privileges which had been granted to and enjoyed by said company, under the name of the Transit Railroad Company, to be further had and enjoyed by said company, under the name of the Winona and St. Peter Railroad Company; denies that the *defendant*, under the name of the Transit Railroad Company, or any name, executed the bond described in the complaint.

For a second defence, the answer alleges substantially, that on the 23d day of June, 1860, the State of Minnesota became and was the lawful owner and holder of all the property, corporate rights, privileges and franchises of said Transit Railroad Company, under and by a purchase of the same, upon a foreclosure sale thereof, under a trust deed executed by said company to Wm. Windom and John H. Harmon, bearing date Oct. 1, 1858, in trust for the first mortgage bond holders of said company, of which bond holders the State was one; that by said act of March 10, 1862, the State granted, transferred and continued said property, rights, privileges and franchises to Wm. Lamb and others, free and clear of all claims and liens thereon, and invested said persons, by the name of the Winona and St. Peter Railroad Company, with the right to enter upon, use and enjoy the road, property, franchises and immunities heretofore possessed by or granted to said Transit Railroad Company, and vested in and continued all the corporate rights and franchises of said Transit Railroad Company to said persons, their associates, successors and assigns, by the name of the Winona and St. Peter Railroad Company; that said Winona and St. Peter Railroad Company is the defendant in this action; that said company derived all its rights, franchises, etc., in the manner aforesaid; that it first organized under and by virtue of said act of March 10, 1862, and is now doing business under and by virtue of the same.

The reply puts at issue the new matter in the answer. Trial by jury was waived, and the cause tried before the court. Upon the trial, counsel for plaintiff read in evidence Chap. 27, laws of 1855, and Chap. 19 of the special laws of 1862. He then offered in evidence a bond executed by the Transit Railroad Company to the plaintiff, for the amount and in manner and form as described in the complaint, to the reading of which in evidence, the defendant, by its counsel, objected on the following grounds:

*First.* That the complaint does not state facts sufficient to constitute a cause of action.

*Second.* That the bond was not, nor does it purport to have been, executed by the defendant.

*Third.* That said bond, from the facts now in evidence, appears to have been executed before the defendant had an existence.

The objection was sustained by the court, and the plaintiff excepted. The plaintiff offered no further evidence, and the defendant, by its counsel, moved that the action be dismissed, which motion was granted, and the plaintiff appeals from the order granting the same to this court.

W. H. DUNNELL, and SMITH & GILMAN, for appellants.

I. The Legislature had no power at the time of the passage of the act of 1862 to form or create a new corporation, and did not by said act so intend. *Art.* 10, *Sec.* 2, *Constitution.*

II. It is the duty of the court to so construe a legislative enactment as to give it effect and validity, if it be susceptible of such construction, and never to annul it by construction. See Smith on Statutory Construction, Sec. 180, Sec. 488; *People v. Supervisors of Orange,* 17 N. Y. Rep. 241; *Mayor of Savannah v. Georgia,* 4 Geo., 26; 4 Paige, 481.

III. The Legislature had the power to revive and continue the old corporation, notwithstanding a forfeiture had

taken place, and a corporation continues to exist until dissolved by judicial action.    Breaches of conditions may be waived, etc.    *People v. Middlesex Turnpike Co.*, 23 Wend., 193; *People v. Phœnix Bank*, 24 Wend., 431; *People v. Oakland Co. Bk.*, 1 Doug. (Mich.) 281; *Black River & U. R. R. Co. v. Barnard*, 30 Barb. 258; *Com. v. Ins. Co.*, 5 Mass., 232; Angell and A. on Corp., Sec. 777; *People v. Pres. Manhattan Co.*, 9 Wend., 378; 1 Parsons on Cont., 3d Ed., 427; 1 Smith L. C. 19, as to waiver, etc.; See Angell & Ames, Sec. 780; *Rex v. Passmire*, 3 T. R., 241; and see *Mayor of Colchester v. Seaber, Ex., etc.*, 3 Burrows, p. 866, top paging to vols. 3, 4 and 5, 281; 22 Conn. 435; *D. & N. Railroad v. Wilson*, 1 Greenleaf, 79 ; 17, Sergt. & Rawle, 64.

IV.   The amendment to Sec. 10, Article 9 of the Constitution, is not intended to qualify Sec. 2 of Art. 10, and the State could, without violating the provisions of Sec. 2, Art. 10, avail herself of the foreclosure by continuing and releasing to the old company, or transferring the property thus acquired, to a corporation created under the general laws.

V.   The State could, by its foreclosure, divest subsequent liens, but could not affect vested rights, and upon relinquishing to the corporation as provided in the act of 1862, the property, etc., so divested of liens, only released its own acquired lien, and left the company discharged thereof.

The claim of Huff is not a lien but a debt, due from the corporation, which the legislature could not and did not attempt to interfere with.

VI.   It is the identity of the franchises and not of the persons connected with a corporation, that determines whether it is the same corporation.    The change of name of incorporators does not affect it, or convert an old into a new corporation. 2 Mason's C. C., p. 43; rule laid down by Judge Story.

VII.   A corporation cannot avoid its debts by dissolving and reorganizing.   4 Mus. & Welby, 621.

VIII.   The State, by the act of 1862, is estopped from denying the existence of the old corporation, and defendants also by acceptance of statutes.   *Com. v. Pypsius*, 10 Mass., 155 ; *Gauth v. Bierir*, 11 Mass., 139.

IX.   The theory adopted for the purpose of preventing a recovery of the  debt set up, will, if carried to its legitimate conclusions, destroy the charters of all the old land grant companies, and should not upon . the grounds of public polity be adopted.

SARGEANT, FRANKLIN & KEYES, for respondent.

The court in refusing to receive the bond in evidence, and in granting the motion to dismiss the action, did not err.

1.   A franchise is an incorporial hereditament, known as a species of property as well as any estate in lands.   It is property which may be bought and sold, which will descend to heirs and may be devised.   *Enfield Toll Bridge v. Hart. & N. H. Railway*, 17 Conn. 40; Redfield on Railways, 589, 590; *Grinnell v. The Trustees of Sandusky, Mansfield & Newark Railway, C. P. Ohio*, Redfield on Railways, 589 ; *Bowman v. Wathen*, 2 McLean R. 393.

2.   A corporation may exercise all the powers and privileges conferred upon it by its charter not prohibited by the Constitution of the  State or United States.   Angell and Ames on Corporations, 7 Ed. Sec. 71, p. 53 and 54.

And the Legislature may confer any power or privilege upon a corporation, not prohibited by the Constitution of the State or of the United States.

3.   The Legislature had the constitutional right to, and did confer upon the Transit Railroad Company, the authority to mortgage all its rights, privileges, and franchises, as well as its other property, real and personal.   And the State was authorized to become the purchaser of said property, rights, privileges and franchises, at a sale thereof on foreclosure of

such mortgage, and to hold and transfer the same, as her property. Chap. 27, Laws 1855; Chap. 2, Laws 1857; Chap. 126, Comp. Stats. (22) Sec. 5, p. 840; Constitutional Amendment 1858; Sec. 10 of Art. 9, Comp. Stats. p. 66; Laws of 1860, p. 269; *Fletcher v. Peck*, 6 Cranch, 87.

4. If, however, there is any question on the last point, in so far as the right of the company to mortgage its property and franchises is concerned, (which it seems to us there cannot be,) of this we think there can be no doubt, that the act of the Legislature, passed and approved March 6th, 1860, declaratory of the conditions broken of the trust deed, and authorizing and requiring the Governor to proceed with the foreclosure, and the act passed and approved March 10, 1862, making the grant or conveyance of the property and franchises of the Transit Railroad Company, acquired by the State at the foreclosure sale, to the persons named in the act under the name and style of the Winona and St. Peter Railroad Company, constitute a full and complete confirmation and ratification by the State of the act of the said Transit Railroad Company in making the trust deed, and thus making it valid *ab initio.* Laws 1860, p. 269; Laws 1862, p. 226; *Shaw et al., Trustees v. Norfolk County Railroad*, 5 Gray, 62; Redfield on Railways, 585–589, note; *Jackson v. Brown*, 5 Wend. 590.

5. The presumption is, that every State statute, the object and provisions of which are among the acknowledged powers of legislation, is valid and constitutional; and that such presumption is not to be overcome unless the contrary is clearly demonstrated. And when the constitutionality of a statute passed by State Legislature depends upon the existence of any facts, the presumption is conclusive, that the Legislature had proof before them of the existence of such facts. *Fletcher v. Peck*, 6 Cranch, 87; *ex parte McCollum*, 1 Cow., 564; *Morris v. The People*, 3 Denio, 381; *The People v. Newell*, 3 Seld., 109;

*De Camp v. Eveland,* 19 Barb., 81; *Rumsey v. People,* 19 N. Y., 47.

So the presumption is conclusive, that the Legislature had proof before them of all the facts necessary to make the act of 1862 (Laws of that year, page 226) valid and constitutional.

6. This respondent is not the Transit Railroad Company, nor is it liable to the appellant for the debt of that company in question. The respondent owns and holds the property, rights; privileges and franchises of the Transit Company, free and clear of all claims against the same, under the State—the purchaser of the same on foreclosure sale thereof. Comp. Stats., p. 840, Sec. 5; Laws of 1862, p. 226; *Pierce v. Emery,* 32 N. H., 512; *Vilas v. Milwaukee and Prairie du Chien R. R.,* 17 Wis., 497; *McDonald & Graham, v. The Minnesota Central Railway Company,* U. S. C. C. for District of Minnesota, June Term, A. D. 1865.

*By the Court*—WILSON, Ch. J.—The Legislature of Minnesota, by an act approved March 3d, 1855, incorporated the Transit Railroad Company, conferring on it power to sue and be sued, contract and be contracted with, and authorizing and empowering it to build and operate a railroad westerly from Winona to the Minnesota River. The company, having organized under the charter, by its bond duly executed in March 1858, bound itself to pay to the plaintiff the sum of $19,500, and interest, on or before the third day of April, 1859, on which bond this suit is brought.

To understand the issues involved in the case, it is necessary to follow the legislation with reference to the Transit Railroad Company, and the steps taken by the Company and its trustees, and by the State officers, in incumbering and disposing of the property and franchises of the Company.

The United States, by an act of Congress approved March 3, 1857, made a grant of land to the Territory of Minnesota, for the purpose of aiding in the construction of certain rail-

roads; and the Territorial Legislature, by an act approved May 22, 1857, granted a portion of said lands to the Transit Railroad Company, to aid in the construction of the road which it was authorized to build.

In April, 1858, the constitution of the State of Minnesota was so amended as to authorize the State to loan its credit to certain railroad companies, of which the Transit Company was one; and the constitution as thus amended, provided, that "as a further security, (for the payment of the interest and principal of the bonds of the State loaned and delivered to said companies,) an amount of first mortgage bonds on the roads, lands and franchises of the respective companies, corresponding to the State bonds issued, shall be transferred to the treasurer of the State, at the time of the issue of the State bonds, and in case either of said companies shall make default in the payment of either the interest or principal of the bonds issued to said companies,   *   *   the governor shall proceed in such manner as may be prescribed by law, to sell the bonds of the defaulting company or companies, or the lands held in trust as above, or may require a foreclosure of the mortgage executed to secure the same." The Legislature, by an act entitled "An act concerning land grant railroads," approved August 12, 1858, provided that whenever default should occur in the payment of the interest or principal of the railroad bonds transferred to the State, the Governor should "immediately proceed to provide for such payment or payments, and to indemnify the State for such payment or payments, or responsibility, by sale of a sufficient amount of the bonds of the defaulting company, or by a sale of the lands pledged, or foreclosure of the mortgage or deed of trust of such defaulting company, or by all or any of such means of indemnification."

The Transit Railroad Company, by a trust deed delivered March 15, 1859, for the purpose of securing the payment of said State railroad bonds, and in pursuance of the requirements of the constitution and State laws, appointed two trustees, to

whom it granted, bargained, transferred, and assigned in trust, the entire railroad of said company, built or to be built, together with all the other property, rights and franchises of said company of every nature and kind whatever, then owned or thereafter to be acquired, and authorized said trustees in case of the failure of the company to pay the interest or principal of said bonds, (or in case of their default, the Governor,) to sell said property and franchises conveyed in trust, and all benefit and equity of redemption of the company therein, and to execute and deliver to the purchaser a deed of conveyance of the same, which should embrace and pass to the grantee therein named, all the right, claim or demand of the company or trustees in or to said rights, property, or franchises.

The Legislature of the State, by an act approved March 6, 1860, after reciting the default of the land grant railroad companies to pay the interest on these bonds, and of the trustees appointed in the trust deed, (the trustees having neglected to proceed according to law,) made it the duty of the Governor to foreclose the trust deed, and upon a sale of the property, rights and franchises, to bid off and purchase the same for the State, and to cause suitable and proper conveyance thereof to be made to the State.

The Governor after having given due notice thereof, on the 23d day of June, 1860, sold at public auction all the rights, properties, lands, privileges and franchises, enumerated in the trust deed, and purchased and bid in the same for, and caused a conveyance thereof to be made to, the State. The State thus having acquired all the property, rights and franchises of any and every nature and kind of the Transit Railroad Company, the Legislature, by an act entitled "An act to facilitate the construction of a railroad from Winona westerly by the way of St. Peter," provided, "That all the rights, benefits, privileges, property, franchises and interests of the Transit Railroad Company, acquired by the State of Minnesota, by virtue of any acts, deeds, agreement or things, by the said State or

company heretofore done or suffered, or by virtue of any laws of the State or former Territory of Minnesota, or by reason of the sale of said road or any part thereof, by the Governor of said State, or by reason of any provision of the constitution of said State, be, and the same are hereby granted, transferred and continued to William Lamb, S. S. L'Hommedieu, John W. Kirk, Herman Gebhart, and H. C. Stimson, for the purpose and on the terms and conditions hereafter in this act provided, free and clear of all claims or liens thereon, and free and discharged from all claims of the State of Minnesota against the same, except as hereinafter provided. And the said persons, by the name and style of The Winona and St. Peter Railroad Company, are hereby invested with the right to enter upon, use and enjoy, all and singular, the road, property, franchises and immunities heretofore possessed by or granted to the Transit Railroad Company, by an act approved March 3, 1855, and by an act approved May 22, 1857, and all other acts granting privileges to said company, and all the corporate rights and franchises of said Transit Railroad Company are hereby vested in and continued to the said William Lamb, S. S. L'Hommedieu, John W. Kirk, Herman Gebhart, and H. C. Stimson, their associates, successors and assigns, by the name and style of the Winona and St. Peter Railroad Company."

The only question of importance in this case is, whether the State, by this cited act, revived the Transit Railroad Company, and continued and re-granted said franchises, rights and property in and to it, under a new name. If this was not the intention of the legislature, and is not the force and effect of the act, the plaintiff cannot recover. It is not important for us in the consideration of this case, to inquire whether the foreclosure by the State was valid, or whether the State in any way acquired a valid title to the lands, franchises and property of the Transit Railroad Company, for it is not claimed that the plaintiff can recover except on the ground that the Winona

and St. Peter Railroad Company and the Transit Railroad Company are the same identical corporation; and it may be be admitted, at least for the decision of this case, that if that identity is proven, the plaintiff can recover. Nor is it necessary to determine whether the legislature, at the time of the passage of the act of 1862, had, under the constitution, the power to create a private corporation. If, in disregard of the inhibition of the constitution, it attempted to confer corporate powers on the defendant, then of course the plaintiff cannot recover; for, in addition to the objection that the defendant is not the legal entity contracted' with by plaintiff, the other objection at once suggests itself, that the defendant is not a person, having power to contract, or be contracted with, sue or be sued. What then was the intention of the legislature, by the act of 1862? Manifestly, the legislature intended by said act to transfer to the defendant the franchises and property formerly owned by the Transit Railroad Company: of this there can be no doubt. But it is claimed by the plaintiff that said act revived said Company, and transferred and continued to it, under the name of the Winona and St. Peter Railroad Company, the property and franchises which it had forfeited to the State; that the defendant and said Transit Railroad Company are the same identical corperation. After a careful consideration of the act, we find not one sentence or section that justifies this conclusion; the tenor of the whole act seems to us inconsistent with such view. The rule is cardinal and universal, that if a statute is plain and unambiguous, and its literal expression leads to no unjust or absurd consequences, there is no room for construction or interpretation. *Newell v. The People*, 3 Seld. page 97. In delivering the opinion of the Court, Johnson, J., says: " Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpretation, the thing we are to seek is *the thought* which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed

in the order and grammatical arrangement in which the framers of the instrument have placed them. If thus regarded, the words embody a definite meaning which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare, is the meaning of the instrument; and neither courts nor legislatures have the right to add or to take away from that meaning."

The act of 1862, by language apt, plain and appropriate, " granted, transferred and continued to (the persons named by the name and style of the Winona and St. Peter Railroad Company,) all the rights, benefits, privileges, property, franchises and interests " of the Transit Railroad Company which had been acquired by the State. The meaning of this language is plain and unmistakable. According to the rules of legal hermeneutics, one true sense being given to the words, and that being apparent and obvious, we cannot properly seek for another. McClosky v. Cromwell, 1 Kern. page 603. This rule is especially applicable where the sense sought is only to be drawn from the language used by a forced and unnatural construction. No portion of the act of 1862, according to a natural or fair construction, conveys the idea that the legislature intended to declare the defendant and the Transit Railroad Company one and the same, and it seems very unreasonable to suppose that the legislature, if it had so intended, would have failed to express clearly such intention. This was a matter of too much importance to the State, the Transit Railroad Company, the defendant and private individuals, to have been left even in doubt. Nor can any argument be predicated in favor of the plaintiff's thereory, on the ground that the defendant has acquired the same property, rights and franchizes which the Transit Railroad Company had.

It does not admit of doubt but that any other company or corporation had the right to purchase such franchises and property at the foreclosure sale; and it is equally clear that the State, after having acquired, had the right to transfer and dispose of said property and franchises, either by returning them to the old, or granting them to another company; and this being admitted, it necessarily follows that their possession *is no evidence* that the possessor is the Transit Railroad Company. It is not the franchises that constitute, or the conferring of franchises that create the corporation. "The artificial person called a corporation is composed of natural persons, and the law deems it to be first brought into existence, and then clothes it with the granted franchises and property." *Dartmouth Col. v. Woodward*, 4 Wheat. page 691.

This artificial being may be dissolved, or in some other way may forfeit its franchises, and the State, under such circumstances, may permit them to merge, and thus become extinguished, or may revive the old corporation, and again confer on it the same franchises, or it may grant them to a different corporation. "To ascertain whether a charter creates a new corporation, or merely continues the existence of an old one, we must look to its terms, and give them a construction consistent with the legislative intent, and the intent of the corporators." *Bellows v. Hallowell Bank*, 2 Mason, pages 43, 44, per Story, J.; Angell & Ames on Corp., Sec. 780.

But it is argued that the legislature, under our constitution, had not the power at the time of the passage of the act of 1862, to create, but that it had the power to revive a corporation of this kind, and therefore that we should hold that it intended to act within the scope of its power, and only to revive and continue the Transit Railroad Company.

Laws should be construed according to the intent of the legislature that framed them; and in explaining this intention, it is doubtless the duty of the courts, when an act admits of two constructions, one of which would render it invalid for re-

Huff v. The Winona and St. Peter Railroad Company.

pugnancy to the constitution to adopt the other; for a court should not presume that the legislature was ignorant of, or intended to violate the constitution. In this case, we think there is no ambiguity in the language of the act of 1862, nor can we entertain the least doubt as to the intenion of the legislature in enacting it; and therefore we think said rule of statutory construction inapplicable, for it is only in cases of doubt as to the meaning of the legislature that there is any room for construction. But an application of the rule in this case would not help the plaintiff. His case is supported by this argument: The act of 1862 revived and continued the Transit Railroad Company, and the constitution forbidding the enactment of any law impairing the obligation of contracts, while the Company exists the legislature have not the power to absolve it from its debts and liabilities. By reference to the act we find that it does transfer to the defendant the property and *franchises* owned by the Transit Railroad Company, "*free and discharged from all claims and liens thereon.*" We must therefore suppose either that the legislature did not by said act intend to revive the old corporation, or that it attempted to transcend its powers in re-granting to it its franchises "*free* and discharged from all claims and liens thereon." The latter supposition not being admissible, according to the rule invoked by the plaintiff, we must adopt the former. In any point of view, we think a fair and natural construction of the act of 1862 negatives the idea that the legislature intended to revive the Transit Railroad Company, or to re-grant and continue to it the franchises and property which it had forfeited.

We do not decide in this case whether the legislature had, at the time of the passage of the act of 1862, power to create a corporation of this kind, that question, in our opinion, not being involved in the case.

The order appealed from is affirmed.