MINNESOTA CENTRAL RAILWAY COMPANY *vs.* B. F. MELVIN, County Treasurer, and another.

March 1, 1875.

Conveyance of Railway, etc., held not to pass Land Grant, or subject it to Taxation. — The effect of a certain instrument executed by plaintiff to the McGregor Western Railway Co., and of a certain instrument executed by the McGregor Western Railway Co. to the Milwaukee & St. Paul Railway Co., and of an act of the legislature, approved March 7, 1867, (the important portion of said instruments being set out in the opinion,) considered, and the same *held* not to establish a sale or conveyance or contract to sell the land to which this proceeding relates, within the provisions of § 9, ch. 1, Laws 1857, Ex. Sess., or § 6, ch. 17, Sp. Laws 1862.

Appeal by defendants from an order of the district court for Steele county, *Lord,* J., presiding, refusing to dissolve an injunction.

*Amos Coggswell* and *J. M. Burlingame,* for appellants.
*Gordon E. Cole,* for respondent.

BERRY, J.[1]    This is an action in which it is sought to enjoin the collection of certain taxes, and to set aside the assessments of the same.    Without entering into details, it will be sufficient to refer to *First Division St. P. & P. R. Co.* v. *Parcher,* 14 Minn. 297, and to *Huff* v. *Winona & St. P. R Co.,* 11 Minn. 180, and to add that, *mutatis*

[1] Cornell, J., did not sit in this case, which was begun while he was Attorney General.

*mutandis*, proceedings similar to those of which a history is given in the opinions of the court in those cases, were taken in the case of the Minneapolis & Cedar Valley R. Co., the result being that the plaintiff, The Minnesota Central Railway Co., under the congressional Land Grant Act of March 3, 1857, (11 Stat. at Large, ch. 99,) and other acts of congress, under the Five Million Loan Amendment to our state constitution, and under the following acts of the legislature of the Territory or State of Minnesota, viz., ch. 1, Laws 1857, Extra Sess.; ch. 17, Sp. Laws 1862; ch. 2, Sp. Laws 1864; ch. 5, Sp. Laws 1865, succeeded to the rights, benefits, privileges, property, franchises and interests of the Minneapolis & Cedar Valley Railroad Co., and among other things, to the lands upon which the taxes in question are assessed, and to the immunity of said lands from taxation, as provided in § 9, sub-ch. 3, ch. 1, Laws 1857, Ex. Sess. Said § 9 enacts that the lands aforesaid, with others, "shall be and are exempt from all taxation, until the same shall have been sold and conveyed by the said company," (the M. & C. V. R. Co.) By § 6, ch. 17, Sp. Laws 1862, it is further enacted that the same "shall be and hereby are exempted from all assessments and from all taxation whatsoever, until the same shall have been sold and conveyed by the said company, or until said company shall contract to sell the said lands."

Defendants contend that the taxes in question should be sustained, because the plaintiff has sold and conveyed the lands upon which the same were assessed. Whether such sale and conveyance have been made, is the only question necessary to be considered in this case. The facts bearing upon the question are as follows: On June 22, 1867, the plaintiff, by deed (Exhibit A) duly executed, granted and conveyed to the McGregor Western Railway Co. "all of their (the Minnesota Central Railway Company's) roadway, rolling stock, equipments and supplies, embracing and including all their railroad from the state line to Austin, thence in a northerly direction to Minneapolis, and embracing the branch

from near Mendota at Fort Snelling to the city of St. Paul, and including the bridge across the Mississippi river at St. Paul, and all further extensions of the railroad of the Minnesota Central Railway Company, as now authorized by law or which shall hereafter be authorized, including the right of way and land occupied by said road, and all the appurtenances thereunto belonging; also embracing all the depots, station houses, engine houses, car houses, warehouses, elevators, machine shops, workshops, superstructures, erections and fixtures, and all lands used for railroad purposes, and all buildings erected and in process of erection thereon, and all appurtenances, rights and privileges thereunto belonging, and also all and singular the locomotives, tenders, passenger cars, carriages, tools, machinery, wood, coal, rents, tolls, profits, benefits and advantages of said Minnesota Central Railway Company. To have and to hold the above granted and bargained premises, with the appurtenances thereof, and all the right, title, interest and property of the said Minnesota Central Railway Company in and to the premises above described, unto the McGregor Western Railway Company, their successors and assigns, to their own proper use forever. And the said Minnesota Central Railway Company, for itself and for its successors and assigns, doth covenant with the McGregor Western Railway Company, its successors and assigns, that it hath a good and indefeasible estate in fee simple, and hath good right to bargain and sell the same, and that it will, and that its successors and assigns shall warrant and forever defend the same to the said McGregor Western Railway Company, its successors and assigns, against all claims and demands whatsoever; excepting and reserving to the grantors all lands that have heretofore been or shall hereafter be donated or granted by the United States or by the State of Minnesota to aid in the construction of the line of railroad above described."

On August 5, 1867, by deed (Exhibit B) duly executed, the McGregor Western Railway Company granted and con-

veyed to the Milwaukee & St. Paul Railway Company " all of their railway, rolling stock, equipments and supplies, embracing and including all their railroad from the Mississippi river at or near McGregor, in the county of Clayton, State of Iowa, * * to Austin in the county of Mower in * * Minnesota, thence northerly * * * to Minneapolis, and embracing the branch from near Mendota at Fort Snelling to the city of St. Paul, * * including the bridge across the Mississippi river at St. Paul, and all further extensions of the railroad of the McGregor Western Railway Company, as now authorized by law or which may hereafter be authorized, including the right of way and land occupied by said road, and all the appurtenances, privileges and franchises thereunto belonging; also embracing all the depots, station houses, * * * and all and singular the locomotives, tenders, * * wood, coal, rents, tolls, profits, benefits and advantages of said McGregor Western Railway Company relating thereto."

By section 1 of an act of the legislature, approved March 7, 1867, (Sp. Laws 1867, ch. 8,) the McGregor Western Railway Company is authorized to extend and construct its line of railway from its terminus in Iowa to Owatonna, and for that purpose it is authorized to exercise within this state all the rights, privileges and powers, not repugnant to the constitution or laws of this state, conferred upon it by its charter and the laws of Iowa. By section two, it is further provided that " the said railway company, having acquired, by purchase or otherwise, the capital stock of the Minnesota Central Railway Company, may exercise within this state all the rights, privileges and franchises which have heretofore been or which shall hereafter be conferred upon the Minnesota Central Railway Company, and shall be subject to all the duties and liabilities incurred by or imposed upon said company." It does not appear that anything has been done under the provisions of this latter section. It is undisputed that the plaintiff does not own or operate or have any interest in any railroad in this state, nor any property in the state, except the lands acquired as aforesaid.

The foregoing are all the material facts appearing in the case, and no comment can be required to show that they altogether fail to make out any sale or conveyance, or contract for sale of the lands in question, and we do not understand the counsel for defendant to contend to the contrary. And the necessary conclusion would seem to be that the taxes to which this action relates, were improperly assessed and should be set aside. But it is argued that the Minnesota Central Railway Co., the plaintiff, has been guilty of fraud in separating the lands from the road, instead of selling them as the work progressed, and using the proceeds to build the road, and that "a railroad corporation, created for the only purpose of building and maintaining a railroad, cannot sell its stock, road and equipment, and that part of the franchise of exemption from taxation pertaining thereto, and retain its lands, with that part of the franchise of exemption relating thereto, and thereby become a great landed corporation, without an act of the legislature authorizing it in terms. There is no act of our legislature authorizing it, and such conduct is a fraud." This latter point is made with reference to a provision of the plaintiff's charter, under which the plaintiff was to pay a percentage upon its gross earnings, in lieu of taxes upon a cash valuation of its real and personal property.

We have no occasion, in this case, to inquire whether these positions of defendants' counsel are well taken or not. Admitting, for the purposes of this case, that they are well taken, they have no tendency whatever to show that the plaintiff has sold, conveyed, or contracted to sell, the lands to which this action relates. If they show, (and we are not to be understood as intimating whether they do or not,) that the plaintiff has done or omitted anything which would subject it to a forfeiture of its franchises and corporate existence, in a proceeding properly instituted for that purpose, this is a matter with which we have no concern in this case.

It is further argued that the plaintiff, in selling its road, etc., to the McGregor Western Railway Co., "abandoned

the objects and purposes for which it was created, and thereby became dissolved." But "a corporation is not to be deemed dissolved by reason of any misuser or nonuser of its franchises, until the default has been judicially ascertained and declared." 2 Kent 312; Angell & Ames on Corp. § 777; *Canal Co.* v. *Railroad Co.*, 4 Gill & Johnson, 121. Our own statutory provisions upon this subject appear to have been framed with reference to, and in entire harmony with this rule. Gen. Stat., ch. 79. It may further be remarked that the abandonment and dissolution (if admitted) have no tendency to show sale, conveyance, or contract of sale of the lands in question.

As there is nothing in this case going to show that the McGregor Western Railway Company ever acquired the stock of the plaintiff company, it is not necessary for us to consider the defendants' position that, upon such acquisition, the plaintiff became "extinct."

The order denying the defendants' motion to dissolve the temporary injunction allowed in this case, is affirmed.