Williams vs. The Milwaukee Industrial Exposition Ass'n and another.

WILLIAMS, Respondent, vs. THE MILWAUKEE INDUSTRIAL EXPOSITION ASSOCIATION and another, Appellants.

*January 22 — May 5, 1891.*

*Curative act: Town plat: Ejectment.*

1. The omission of the seal of a justice of the peace from his certificate of the acknowledgment of the town plat of Milwaukee, which the statute of Michigan in force here in 1835 (Ter. Laws of Mich. 1827, p. 278) required to be affixed thereto, was cured by ch. 348, Laws of Wisconsin for 1883, and such plat became a sufficient conveyance to vest the fee of certain blocks, designated thereon as "to be left vacant as public grounds," in the town, in trust for the purposes intended.

2. Whether a person claiming title to a portion of a block so designated on the plat, under conveyances from the original owner who executed said plat, can maintain ejectment against the city of Milwaukee for such portion, even though the city may have leased such block for a purpose not public, doubted.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is fully stated in the opinion. The defendants appeal from a judgment dispossessing and ejecting them from the premises in question, and from all use thereof for the purposes of an exposition, but subject to the right of the city to use them as an open public square, or for the erection of a market-house thereon, and awarding to the plaintiff six cents damages and costs to be taxed.

For the appellants there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas* and *R. N. Austin,* and oral argument by *F. C. Winkler* and *R. N. Austin.* They contended that the plat, having been of record for fifty-five years, must be presumed to have been executed according to law; that it contained all the requisites of a deed or conveyance under the then existing laws of Michigan; and that the plaintiff was estopped from denying its completeness by the facts that it was the statutory duty of the ancestor

under whom he claimed title to perfect it, and that such ancestor had sold lots with reference thereto, citing numerous authorities. They also claimed that the defect of the want of a seal to the justice's certificate was cured by ch. 348, Laws of 1883.

For the respondent there were briefs by *Pinney & Sanborn* and *Henderson & Williams*, and oral argument by *S. U. Pinney*. They argued, *inter alia*, that the town plat was void as a statutory conveyance, for want of the requisite seal of the justice who took the acknowledgment. To operate as such, the statute must be strictly complied with. Considered as a common-law dedication, the lease to the Exposition Association was a breach of trust on the part of the city, citing very many authorities. They also argued that the defect in the execution of the plat was not cured by ch. 348, Laws of 1883, because that extends only to instruments not having the seal of the grantor, and which would operate only in equity, and as contracts to convey,— to conveyances valid as such without registry. In this case, it is the record itself, and that alone, that can operate as a conveyance.

COLE, C. J. This is an action of ejectment, brought by the plaintiff to recover forty-six ninety-sixths, undivided, of the east one-half of the block on which the Exposition building is located in the city of Milwaukee. It appears that on October 8, 1835, Byron Kilbourn, who was then the sole owner of the premises, made and recorded a plat of this and of other tracts of land belonging to him, laying the same out in blocks and lots, with streets and alleys, as and for the town of Milwaukee, on the west side of Milwaukee river. On the plat were blocks marked "Public;" and in the certificate signed by Mr. Kilbourn, on the plat, it is stated that "the four vacant spaces marked 'Public' are of the dimensions represented by the lines on the plat,

and are to be left vacant as public grounds, no building ever to be erected on them by any body corporate or politic, except in case of the town being incorporated, the town authorities may erect a market-house on either of these spaces lying in front of blocks Nos. 36, 52, or 76, but no building shall be erected on the space in front of block No. 24." The land in question lying in front of block 52 was not marked "Public" on the plat offered in evidence, but the certificate clearly identifies it as intended to be public grounds for a park or commons or public square. At the time the plat was made Milwaukee was not incorporated, either as a village or city.

· The plat was executed under a statute of Michigan territory, which territory embraced what is now the state of Wisconsin, and which statute, in effect, provided that town plats to be recorded should particularly set forth and describe all public grounds within such town by its boundaries, courses, and extent, and whether it be intended for streets, alleys, commons, or for public uses, and all the lots intended for sale by progressive numbers, and their precise length and width; and the plat was required to be acknowledged before a justice of the peace, a justice of the county court of the proper county where the town lay, or before a judge of the supreme court, and certified under the hand and seal of the judge or justice taking such acknowledgment, and recorded. And it was enacted that such plats should be deemed a sufficient conveyance to vest the fee of the said parcels of land as therein expressed, named, or intended to be for public uses in the county in which such town lay, in trust to and for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever. Revised Laws of Michigan, 1827, p. 278, sec. 2, of an act to provide for the recording of town plats, approved April 12, 1827. When a plat was executed and acknowledged in the manner and

according to the formalities prescribed in this statute, it was declared that it operated as a statutory conveyance of the title of all grounds intended for public purposes.

After the plat was recorded, and in December, 1835, Mr. Kilbourn and wife conveyed to the father of the plaintiff the interest in the premises which is claimed in this action, such interest having become vested in plaintiff, by deeds which were offered in evidence.

The learned trial judge found as facts, among other things, that in 1867 a large building was erected by certain residents of Milwaukee, covering nearly the south half of the square, which building, two years thereafter, began to be used as a public market-house, in which stalls or apartments were let or rented to gardeners and dealers in meats and groceries, and that the building continued to be so used as a public market until the year 1880 or 1881, when the building was torn down, and was replaced by the Exposition building, owned by the *Milwaukee Industrial Exposition Association,* a defendant herein. The circuit judge further found in effect that in 1875 a corporation was formed, called the "West Side Market Association," and that in August, 1876, the city of Milwaukee leased to said corporation all the public square in controversy, including the building, for five years, at a nominal rent; further, that in January, 1880, certain named business men, residents of Milwaukee, formed a private corporation with a capital stock of $150,000, called *The Milwaukee Industrial Exposition Association* for the purpose of constructing and maintaining an exposition for industrial and other objects in Milwaukee. It likewise appears from the finding that the city leased to this association the public square or ground west of block 52, to be used only for an industrial exposition, and for such other purposes of a public nature as the directors of the association might see fit, for a nominal rent, for the term of fifty years from the date of the lease.

With this statement, our remarks upon the case will be understood.

Some of these findings were excepted to by the defendants, but from the meager evidence set forth in the bill of exceptions we assume they were supported by the testimony. There is really no disagreement as to the essential facts of the case. The controversy is as to the law applicable to them.

The first question which we shall notice is as to the effect of the plat which was recorded. It is insisted by the learned counsel for the plaintiff that the plat is void as a statutory conveyance, because the justice before whom the acknowledgment was taken did not affix his' seal to the certificate of acknowledgment. It will be seen that the provision, as quoted above, requires that the officer shall certify to the acknowledgment *under his hand and seal*, and it is said that this was not done in this case. To this objection it is answered that, as the plat was made and recorded nearly fifty-five years ago, having served every purpose of a recorded plat, it must be conclusively presumed that it was executed in accordance with the existing law, and that the register by mistake omitted to copy the seal on the record, or did not know how to copy an impression in wax.

The presumption *omnia rite et solemniter esse acta* will surely arise from lapse of time; but will a grant be presumed from such testimony as above given? To operate as a conveyance in the fee the plat must be executed in the way and according to the formalities prescribed by the statute. This rule of law was laid down in *Gardiner v. Tisdale*, 2 Wis. 155; *Emmons v. Milwaukee*, 32 Wis. 434,— and the principle is well settled upon the authorities. The effect of the Michigan statute obviously is to make a plat, when properly executed and acknowledged, operate as a statutory conveyance of the title of the streets and public grounds designated as such therein to the corporate author-

ities, in trust for the uses specified, and for the benefit of the adjoining owners and the public generally. *Kimball v. Kenosha*, 4 Wis. 321. We do not well perceive how it can be said that the seal of the justice to the acknowledgment was unnecessary, in view of the provision, nor how it could be dispensed with, and it would be a violent presumption, upon the evidence, to assume that it was affixed by the justice when he took the acknowledgment. The question was clearly involved in *Baker v. Johnston*, 21 Mich. 319, but does not appear to have received much consideration from CAMPBELL, C. J., who gave the opinion in the case. See, also, *Grand Rapids v. Hastings*, 36 Mich. 122; *Diamond Match Co. v. Ontonagon*, 72 Mich. 258.

But, assuming that the plat was insufficient to pass the title on account of the omission of the justice to affix his seal to the acknowledgment, the question arises whether the defect has not been cured by statute. The counsel for the defendants insist that it has been, and they rely upon ch. 348, Laws of 1883 (sec. 2206a, S. & B. Ann. Stats.), to sustain their position. The law reads as follows:

"Every instrument in writing heretofore made, purporting to convey real estate, and which shall have been duly signed, witnessed, and acknowledged, or proved according to the laws of this state in force at the time of the making of such instrument, but which shall not have been sealed, is hereby declared to be and to have been a full and perfect conveyance of the real estate therein described and as therein purported to be conveyed, the same as if said instrument had been sealed at the time of its execution; and every such instrument shall be entitled to be recorded, and shall, together with any record thereof heretofore made, be receivable in evidence with the same force and effect as if it had been sealed at the time of its execution; provided, however, that this act shall not apply to deeds to which

official seals or seals of corporations should have been affixed, nor to tax deeds."

It seems to us that this statute applies to this case, and makes the plat operative as a conveyance, in the absence of the seal of the justice. The contention of the plaintiff is that the seal of the justice to the acknowledgment was essential to make the plat good as a statutory conveyance. The plat was certainly an instrument in writing purporting to convey real estate. It was duly signed, witnessed, and acknowledged before a justice of the peace, who failed to affix his seal. This provision declares, in effect, that, notwithstanding this defect, the instrument shall be a full and perfect conveyance of the real estate purporting to be conveyed, the same as if the instrument had been duly sealed at the time of its execution.

It is said by the learned counsel for the plaintiff that this provision only extends to instruments not having the seal of the grantor, where they would operate in equity as contracts to convey. But the language of the provision is general, admits of no such qualification, and applies to any instrument intended to operate as a conveyance of real estate, and which is defective for want of a seal. The absence of a seal does not affect its validity or its legal effect or of any record of it. Under this statute the record is admissible in evidence, and the instrument itself is made effective for the purposes for which it was intended. This is the plain meaning of the language, and is the intent of this law.

Such curative statutes, relating to various matters, have been frequently enacted, and their validity has been sustained. The principle upon which such legislation is held valid is that, "if the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something which the legislature might have dispensed with the necessity of by prior statute, then a subsequent

statute dispensing with it retrospectively must be sustained." *Blount v. Janesville*, 31 Wis. 650; Cooley, Const. Lim. p. 458. " The true limit of such curative power of the legislature, as gathered from all the authorities and sanctioned by principle, is, or ought to be, to reach things voidable only and not void; defects of execution only, not of authority or jurisdiction." RYAN, C. J., in *Kimball v. Rosendale*, 42 Wis. 412. It is evident that the act of 1883 is within the limit of legislative power as defined by the above authorities. The legislature could certainly have dispensed with the seal of the justice to the acknowledgment in the first instance, and have rendered it unnecessary. Therefore the legislature could cure the defect, as we think it has done by the above provision. *Watson v. Mercer*, 8 Pet. 88.

These views are of course decisive of this case; for, if the plat is good as a statutory conveyance, the plaintiff has no standing in court, but we feel called upon to add that we entertain very grave doubts whether this action of ejectment will lie upon the undisputed facts appearing in the record. The plaintiff seeks to recover possession of an undivided interest in a public square because the city has perverted the trust, or misappropriated the ground by leasing it to the exposition association for an industrial exposition, and for purposes of a public nature. Conceding that the nature and use of an industrial exposition building does not fulfil the purposes of a market-house, which Mr. Kilbourn permitted to be erected upon it by the town authorities, and that it was a perversion of the trust, yet, does it follow from this that the plaintiff has the right of re-entry for condition broken? The lease given by the city to the exposition building was expressly authorized by statute. Ch. 461, Laws of 1885, provides that " the city of Milwaukee is hereby authorized to lease the piece of ground lying between State street on the north, Cedar street on the south,

Fifth street on the east, and Sixth street on the west side thereof, commonly known as 'block number one hundred and sixty-five, in the Second ward of the city of Milwaukee' [which, as we understand the evidence, includes the square in question], to any association for the purpose of maintaining a building thereon, to be used for annual industrial expositions, and for a public museum; and any such lease or leases heretofore made for any such purposes are hereby ratified and confirmed." This is a direct grant of power by the legislature to the city not only to make the lease, but it also sanctions and ratifies any lease that has been made. Now, it seems to us that one of two things is true,— either that the plat, aided by the curative statute, conveyed the fee of the ground in trust for the purposes expressed, or it amounted to a valid dedication *in pais* of the square for public purposes. Assuming, for the sake of the argument, a position which is contrary to our view of the law,— that there was a mere common-law dedication of the square, which did not divest the original owner of the fee, but secured to the public the right to use the square for public uses,— then, by what right can the plaintiff maintain this action for the recovery of the possession? He has parted with all interest in the property which was deeded to his father by Mr. Kilbourn. On what ground can he interfere to guard and protect the rights of the public in the square?

A person cannot maintain an action to abate a public nuisance except where he has sustained some special or peculiar damage different from the public at large. This is elementary law. It is true, the owner of the soil may maintain ejectment against one who enters upon and permanently incumbers a highway to the exclusion of himself and of the public; but this goes upon the principle that the fee remains in such owner, who may lawfully make any use of the highway which is consistent with the public easement. The public have only the right of passage over the highway, and

the owner may make any use of the highway which will not interfere with the right of passage. *Gardiner v. Tisdale, supra,* was ejectment to recover a public landing. See, also, *Barclay v. Howell's Lessee,* 6 Pet. 498; *Cincinnati v. Lessee of White,* 6 Pet. 431; *Huff v. W. & St. P. R. Co.,* 11 Minn. 180. But here the plaintiff seeks to recover possession of a public square which the city has a right to use consistently with the object for which it was dedicated. The city may build a market-house on it if the exposition building is not one. Now, if the plaintiff should recover possession of the square, what use could he make of it which would not be hostile to the public right therein? The public right and the private right which the plaintiff would enforce seem incompatible. But he says, in effect, that the trust has been perverted, and that the square has been devoted to objects not justified or designed by the owner who made the dedication. It is possible that an adjoining lot-owner might enforce the trust, and compel the city to cease misappropriating the square. Upon that point we express no opinion. We would suppose that the attorney-general, on behalf of the state, might do so, were it not for the statute to which we have referred, which expressly sanctions the use which the city has made of the square.

But, in any view, if we are wrong to the effect of the plat operating as a conveyance of the title of the square, we still cannot perceive how the plaintiff would obtain any fruit or benefit from this action of ejectment. A writ of possession would be unavailing or fruitless, as it seems to us, under the circumstances. Would a court order the sheriff to pull down forty-six ninety-sixths undivided part of the exposition building, which the legislature has authorized to be built, maintained, and used for the purpose of annual industrial expositions, and, if so, upon what rule of law or principle

of justice could such action be vindicated? But we dismiss the subject without further remark.

We think the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*— It is so ordered.