## WEISBROD VS. THE CHICAGO AND NORTH-WESTERN RAILWAY COMPANY.

1. The plat of M.'s addition to a city (though not acknowledged so as to entitle it to record) was recorded in 1847, and showed a street on the *east* side 40 feet in width. The plat of C.'s addition to the same city, recorded in 1848, showed a street on the *west* side 40 feet in width. The actual distance between the western line of stakes designating lots in C.'s addition and the eastern line of such stakes in M.'s addition, was 107 feet, of which a central strip 27 feet wide is now claimed as the property of M.; but there was nothing on the plats, nor any monuments on the land to indicate that there was any space between the two platted tracts, or to show the actual boundary between the lands of M. and C. The whole space of 107 feet has been used as a public street since that time, and lots sold on each side with reference to said plats. *Held,* that M. and those claiming under him are *estopped* from setting up title beyond the actual center of the street, as against plaintiff who purchased a lot on the opposite side of the street in 1849, without actual notice of M.'s title.

2. Although the unauthorized record of M.'s plat did not operate as a *grant* of land for a street, yet his acts in laying out and platting the land, and selling lots in reference to the plat, show a *dedication* of the land to the public use as a street.

3. The owner of land dedicated for a public street, may maintain *ejectment* against a railroad company permanently occupying any part of the same for its roadway.

4. A book of records kept in the register's office of Winnebago county, purporting by a memorandum (without signature) on its first page, to contain on certain pages transcripts of deeds from the records of Brown county, *held* competent evidence of the conveyance of land by one of the deeds so transcribed, under sec. 5 of "An act to organize the counties of Jefferson," &c. (Laws of 1842, p. 75), or sec. 145, ch. 13, R. S.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, for a strip of land between the middle and eastern boundary of what is known as Broad street, in the city of Oshkosh. Plaintiff claimed the premises as part of his lots

fronting on said street, and located in Conklin's addition to said city. The complaint alleges that in 1860 defendant entered upon the premises, and put the plaintiff out of possession thereof, and held "and still doth unlawfully hold possession thereof, and by artificial embankments, railroad track, side track and other works, has destroyed the use of the same as a public street or highway, and has exclusively appropriated the same to its own use, and claims the sole right to use and possess the same, or a considerable portion thereof, as a railway, for its engines, cars and other movable vehicles, and unlawfully withholds possession thereof from the plaintiff." The answer admits that defendant uses a strip about eight feet wide, on the west side of the premises, but denies that it was, at the commencement of the action, in possession of any part of said premises, or ever ejected plaintiff therefrom, or exclusively appropriated any part to its own use, or claims the exclusive right to use and possess the same. It then avers, in substance, that the strip of land on which its track is constructed, is the property of one Miller, with whose permission it entered upon and still uses and occupies the same, for the purposes of a railway. It also denies plaintiff's title to the lots claimed by him on said street.

In making out his claim of title to the lots claimed by him, plaintiff offered in evidence "a book which is among the books of records in the office of the register of deeds of said county," on the first page of which was the following memorandum:

"Book A.  Record for Winnebago County, Wisconsin Territory:

The first record in this book, dated July 28, 1843. The last was July 19, 1845.  See page 221.

N. B.—All the deeds from page 1 to 8 inclusive, and from page 20 to 147 inclusive, are a transcript from Brown County Records; the remainder of deeds on this book are deeds for record, presented from time to time."

On the same page was also the following : " Mr. C. Dickinson, Register of Deeds. Sir :—The following resolution was passed by the county board of supervisors at a special session on the 19th of May, 1843 : 'Resolved, That the County Register of Deeds be, and he is hereby requested to record all land conveyances entire, which may be presented to him for record.' Winnebago County, June 2, 1843.   G. F. WRIGHT, Clerk of C. B. Supervisors." The first deed recorded in the book is dated and acknowledged June 29, 1840, and received for record July 22, 1840, and the last deed recorded is dated and acknowledged June 12, 1845, and received for record July 19, 1845.   The deed offered to be proven by said record was dated November 6, 1840, and had the following certificate attached : "Received for record, November 7, 1840.   J. McKENNIG, Register." The evidence was objected to on the ground that " it was not a proper record of said county, and did not contain necessary certificates, &c." Objection overruled.

Miller's " 1st Addition " to the city of Oshkosh was laid out, and a plat of it recorded, in March, 1847, but without any proper acknowledgment entitling it to record.   This plat showed a street on the east side thereof, forty feet wide, the same being a part of Broad Street.   Conklin's " 2d Addition " to said city was laid out, and the plat recorded, in April, 1848. Plaintiff introduced in evidence the record of both plats, which was received against objection.   The precise ground of the objection to Conklin's plat does not appear from the printed case.   The last mentioned plat, on its west side, showed a street forty feet wide, which was also a part of Broad Street. There was nothing in the plats, and no monument on the ground, to show any intervening land, between the two plats, reserved by the owners or either of them for private use ; nor was there anything to show the real boundary or dividing line between them.   There was in fact an intervening strip about twenty-seven feet in width, being a part of Miller's tract not

Weisbrod vs. The Chicago and North-Western Railway Company.

delineated on his plat; so that between the west line of stakes designating lots on Conklin's plat, and the east line of stakes designating lots on Miller's plat, there was a space of 107 feet in width. Improvements had commenced upon the whole of said space before plaintiff acquired title to his lots, which was in August, 1849; and said space has ever since been held and used by the public as a highway. The city authorities caused a map of the city to be made in 1853, on which the whole of said space was delineated as constituting Broad Street; and this map, offered in evidence by plaintiff, was received against objection. In 1855 said street, in its whole width, was graded by the city, and plaintiff testifies that he paid for said grading to the center of the same. He also testifies: "When I bought, I had no knowledge of any one's claiming land in the center of the street. When I first came to Oshkosh, Miller showed me his lots on the west side of Broad street, and pointed out the width of the street in front of them."—It appears that the defendant's track (the ties being about eight feet in length) was upon the above described strip, twenty-seven feet in width in the middle of the street. The court would not permit defendant to show title in Miller to said strip; holding, under former decisions of this court in the same cause (18 Wis., 35; 20 id., 418), that Miller and those claiming under him were estopped from claiming such title. It also refused an offer of evidence of said title to be followed by proof that Miller, at all times since the making of his plat, "has openly, notoriously and publicly claimed that said strip of land was not platted, and was not a part of the street; that he notified plaintiff, and also the common council of the city, at or before the making of the city map, that he claimed said strip of land, and that it never had been platted; and that when said street was first graded, he notified the street contractors that he claimed said land, and forbade them to grade said strip."

The court refused to instruct the jury at defendant's request,

that the use of a public street for a railroad track, which does not exclude the public use, does not authorize an action of ejectment by the owner of the fee; and that plaintiff, even if such owner, could not recover, unless it appeared that defendant occupied the premises denying plaintiff's title or interest therein.

Verdict and judgment for the plaintiff; and the defendant appealed.

*Gab. Bouck,* for appellant:

1. The book of records purporting to contain transcripts from Brown county, was improperly admitted in evidence, because there was no certificate of the register of deeds, as required by the act of 1842.* 2. The court erred in admitting the record of the plat of Miller's Addition. *Gardiner v. Tisdale,* 2 Wis., 153. It did not pass any title in the street out of the proprietor of the land. 3. The defendant should have been allowed to show that Miller, when he platted, left a strip of his land on the east side not included in the plat, and had at all times so claimed and proclaimed. If plaintiff's evidence of what occurred in 1853 and 1855 as to mapping and grading Broad Street was material, then defendant's evidence, as rebutting the inferences derived from the former, was not immaterial. Conklin's plat does not purport to join on the west Miller's plat, nor show any street on the west side except the one forty feet wide there delineated. Previous to the city map of 1853, there were no records showing Broad Street as claimed, or indicating upon their face that all the space between Miller's east lots and Conklin's west lots was a street. That map

---

* "An act to organize the counties of Calumet and Winnebago," &c., approved February 18, 1842 (Laws of 1842, pp. 74, 75), provided as follows: "§ 5. The register of deeds of Calumet and Winnebago *counties* shall have the privilege of transcribing from the records of the county of Brown, free from charge, any record of conveyance of land in the said counties of Calumet and Winnebago; and such transcripts, duly certified by the register of deeds, shall be as good and sufficient evidence of such conveyance in any courts of this territory, as certified copies of the original record."

brought the two plats together, and represented all the lands between as a part of Broad street. If that fact had any tendency to prove an estoppel against Miller, the effect of the evidence would have been overcome by the evidence offered by defendant and refused. 4. Acts constituting an estoppel, whereby the land of one person is transferred to another, should be plain, decided, and clearly proven, and of a much higher character than those which may serve to establish a dedication. *Hill v. Epley*, 31 Pa. St., 331. Admitting even that Miller, by his acts, dedicated the land for street purposes, it does not follow that the title passed out of him. Ang. on Highways, 296–9; *Peck v. Smith*, 1 Conn., 127; *Watrous v. Southworth*, 5 id., 305; *Rex v. Edmonton*, 1 M. & Rob., 24; *Rex v. Hatfield*, 4 Ad. & El., 164; *Poole v. Huskinson*, 11 M. & W., 827. 5. The occupation of a public street for a railroad track, which does not exclude the public use, does not authorize an action of ejectment by the owner of the fee. *Doe v. Cowley*, 1 C. & P., 123; 1 M. & W., 201; 1 Chip., 204; *Northern T. R. Co. v. Smith*, 15 Barb., 355; *Redfield v. R. R. Co.*, 25 id., 54; *Wilklow v. Lane*, 37 id., 244; *Jackson v. May*, 16 Johns., 184; *Child v. Chappell*, 5 Seld., 246; *Adams v. R. R. Co.*, 11 Barb., 451–3.

*Felker & Weisbrod*, for respondent, argued that if sec. 5 of the act of 1842 requires the register of deeds of Winnebago county to certify in his book of records, that the records transcribed from Brown county are transcripts, then the certificate found in the book is sufficient. *People v. Ransom*, 2 Hill, 51; 4 Denio, 145; *Miller v. Lewis*, 4 Coms., 568. Again, the book presented was one of the books of record in the register's office of Winnebago county. Certified transcripts therefrom are made evidence in all cases by sec. 145, ch. 13, R. S. 1858. It would seem, therefore, that the record in the book itself is evidence. *People v. Gray*, 25 Wend., 467. See also 1 Greenl. Ev., §§ 483–85. To the point that ejectment will lie against

the defendant, for its occupying plaintiff's land, counsel cited Adams on Ejectment, 21, and cases there cited; *Williams v. R. R. Co.*, 16 N. Y., 97; *Ford v. Ch. & N. W. R. W. Co.*, 14 Wis., 609.

DIXON, C. J. The facts appear somewhat different, but I do not see that they materially affect or change the question of estoppel as decided by this court on the first appeal. 18 Wis., 41. That decision was made upon the supposition that the plat of Miller's addition was properly acknowledged so as to entitle it to be recorded. It now appears that it was not. But this does not seem to me to affect the right of the plaintiff to hold to the center of the street. The only difference is, that in the one case the street became a public highway by grant, and in the other by dedication. This is settled by *Gardiner v. Tisdale*, 2 Wis., 153. The street existed the same as it now exists, in August, 1849, when the plaintiff purchased. Its width was indicated by the boundaries of the adjoining lots, which boundaries were easily ascertained by the stakes. The stakes on the west side of the street were set by Miller. It is not pretended that there was anything on Miller's plat, or any stakes, monuments or marks in the street itself, to indicate that the whole intervening space was not dedicated to the public as a highway. Miller showed the plaintiff his lots on the west side of the street, before the plaintiff purchased on the east, and pointed out to him the width of the street in front of them. The plaintiff bought without any knowledge of Miller's title or claim to the strip of land in the center of the street. Under these circumstances, the doctrine of the former opinion seems to me fully applicable. Where land is divided into lots, blocks and streets, as in our cities and villages, it may be said to be the universal understanding that the purchaser of a lot takes to the center of the street unless the contrary is expressly declared by the deed or shown by the plat. It is so "because

the price of the lots depends upon their location in reference to the streets, and the vendor receives a consideration, not only for the precise amount of land described in the lot, but also for that used for the street on which the lot is bounded." *Kimball v. Kenosha*, 4 Wis., 431. I do not doubt that there may be an estoppel in such cases, nor that the owner of lots on one side of a street may preclude himself from setting up title to the land beyond the center of the street by permitting the owner of lots on the opposite side to sell to purchasers for a valuable consideration, without notice. This principle is recognized and strongly exemplified in two decisions in the court of appeals of New York. I refer to *Bissell v. Central R. R. Co.*, 23 N. Y., 61, and *Tallmadge v. East River Bank*, 26 N. Y., 105. Before ratification by the public authorities, Broad street was a public street as to the grantees of the adjoining lots. After such ratification, it became a public street to all intents and purposes, the same as if Miller's plat had been properly authenticated by his acknowledgment, and he can no more be permitted to reclaim it in the one case than in the other.

The admissibility of the book of records of deeds transcribed from Brown county depends upon section five of the act approved February 18, 1842, Laws of 1842, p. 75. The language of the section is not very clear, but, as I understand it, the certificate spoken of is the certificate of the register attached to a copy of a deed taken from the book of transcripts. I do not understand that the book of transcripts was itself to be certified. The possession of the book by the register of deeds in his office was sufficient evidence of its authenticity. If a certified copy from the book is legal evidence, then I think it very reasonable that the book itself should be, though not expressly made so by the words of the statute. *People v. Cady*, 25 Wend., 467. But if I am wrong as to the proper construction of the act of 1842, still I think the same conclusion follows under section 145, ch. 13, R. S.

The question whether an action of ejectment can be maintained in a case like this, was conclusively settled in *Gardiner v. Tisdale, supra.* It was there held that the original owner, or those claiming under him, of land dedicated to public use, might maintain ejectment against a permanent incumbrancer or occupier, inconsistent with, or repugnant to, the purpose of the dedication or grant. I see no error in the proceedings or judgment, and am of opinion that they should be affirmed.

*By the Court.*—Judgment affirmed.

DOWNER, J., dissents as to the point of estoppel.