BATES and another, Appellants, vs. THE CITY OF BELOIT, Respondent.

*April 8 — April 25, 1899.*

*Public park: Dedication* in pais: *Acceptance: Evidence: Curative statutes.*

1. In 1838, lands, then in the possession of the person by whom they were afterwards entered, were by him platted before they were thrown open to entry. This plat was never recorded but was published by exposure in the most public places. After entry a new plat, substantially like the first, was made, acknowledged, and recorded. In both plats there was an uninclosed space over which streets were not continued, the ends of the streets debouching thereon not being closed by lines. On the earlier plat the space was designated as "Mechanics' Green" and on the later plat it was unmarked by any designation. The owner made numerous conveyances according to the earlier plat, and frequently therein referred to the space designated "Mechanics' Green," and some parcels conveyed were described as bounded thereon. During the owner's life time, he participated in a Fourth of July celebration held thereon, which was preceded by clearing off the brush on the vacant space by the public. He died in 1842. Thereafter, almost every year, some act of improvement, including fencing in 1866, was performed by the community, through public subscription, or by the municipal authorities. These premises were never assessed for taxation. Nearly fifty years after the recording of the later plat, plaintiffs, grantees of the heirs of the original owner, attempted to gain possession of, and built a fence around, the vacant grounds, which was immediately torn down by the city officers; and thereupon this action of ejectment was brought. *Held,* that the evidence showed a deliberate appropriation of the tract in question by the owner, for public uses, by acts and conduct indicating such

Bates and another vs. The City of Beloit.

intent, followed by public user and acceptance; and that said tract had thereby been dedicated for use as a public park, defendant holding it in trust for such use.

2. A plat of lands, whether or not effective as a conveyance, is admissible in evidence, by its record, under sec. 2216b, Stats. 1898.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Affirmed.*

In 1837 one Horace White came from New Hampshire to what is now Beloit, Wisconsin, for the purpose of establishing a town there. He acquired a possession, with an indefinite possessory right, of certain lands from a squatter, while R. P. Crane and Otis P. Bicknell made claim to certain adjoining lands. He caused to be prepared a town plat in 1838, which was never recorded, but which was lithographed, and published by exposure in the most public places in the settlement of Beloit, and known as the "Kelsou plat;" and according to it numerous conveyances of lots were made. No conveyances are shown to have been executed by White until after he entered the lands. In 1840, the lands being thrown open to entry, White, Bicknell, and Crane entered the respective portions which they had previously claimed, — the entry by White being made April 13, 1840,— and caused to be made a plat by one Hopkins, county surveyor, which in the main corresponded with the Kelsou plat, although there were some slight differences. In the southeasterly portion of the platted grounds, within the tract entered by Horace White, was a space, less than a block in width, but more than a block in length, over which streets were not continued, and which was not inclosed by any lines; the ends of the streets debouching thereon not being closed by lines. On the Kelsou plat this had been designated as "Mechanics' Green," while a parcel of ground a few hundred feet northwest thereof, and considerably larger in extent, had been designated as "Public Square." On the face of the Hopkins plat this was left unmarked by any designation,

but, in the surveyor's certificate attached to and recorded with the Hopkins plat, "Public Square" and "Mechanics' Green" are together described, and the description of the latter corresponds with the location of this unmarked parcel. The tract has at all times since the making of the Kelsou plat been called "Mechanics' Green," and was frequently referred to by White in conveyances, and some parcels conveyed by him described as bounding thereon. The Hopkins plat had attached to it a due certificate by the surveyor, a certificate by the owners that they had caused the same to be surveyed and platted, and a certificate by a justice of the peace that the foregoing papers, described in the owner's certificate as "the foregoing survey, plat, and description," were on August 6, 1840, acknowledged to be their voluntary act, for the uses and purposes therein mentioned, by Horace White, R. P. Crane, and Otis P. Bicknell. Following this plat, conveyances continued by Horace White up to the time of his death on December 23, 1843, such conveyances referring to the recorded plat of Beloit, and several of them referring to Mechanics' Green as a boundary.

It is abundantly shown by evidence that from a date prior to 1840 this tract has had the uniform and public reputation of being a public park. Its use as such was, of course, somewhat indefinite in the earlier years, when vacant grounds were abundant; but at least two significant acts during Horace White's life are shown: One, the use thereof in July, 1843, as a place to hold a Fourth of July celebration, which was preceded by the clearing off of the brush from the ground by the public. Horace White himself participated as a speaker at that celebration. Another significant act was the use of Mechanics' Green as a place of meeting for the commissioners of highways in December, 1843. Continuously since, and by unambiguous acts, the tract has been treated as public; and almost continuously from the time of clearing off the brush in 1843, onward, some acts of im-

provement, in the way of clearing up, grading, planting
trees, and later cutting of grass, building of band stand,
placing of seats, sodding, and in 1866 fencing, have been
performed by the community and by the municipal author-
ities, during all of which time the proof of general reputation
as a public park donated by Horace White is ample.

At the death of Horace·White, in 1843, some of his chil-
dren were minors. Their age is not shown, but, of necessity,
they must all· have attained their majority as early as 1864,
and probably some years before. Many parcels of land are
shown to have been purchased from Dr. White in his life-
time, and from his heirs after his death, upon the belief
that this tract was public ground. In 1866, at the combined
expense of public subscription and an appropriation from
the city treasury, the principal portion of the ground was
inclosed with a substantial fence, and remained so inclosed
until 1881, at which time a general movement for the re-
moval of fences, private and public, took place, when that
fence was removed, but with no color of abandonment. In
1888 a conveyance was made by certain of the heirs of
Horace White by a quitclaim of a portion of this tract, and
the purchaser attempted to gain possession thereof by fenc-
ing it; but the fence was immediately removed by city offi-
cers, apparently within an hour or two of its erection.
About 1855 the widow of Dr. White and the guardian of
his children caused to be made and recorded a plat subdi-
viding this tract into blocks and lots, under authority of
ch. 225, P. & L. Laws of 1855. Several mesne conveyances
seem to have got the record title to these lots into Clara W.
Sims, a daughter of Horace White, prior to December 21,
1894, on which date she made a deed to the plaintiffs.

The action is in ejectment, alleging possession by the de-
fendant, the city of *Beloit.* The occupation of these grounds
by the public, and the reputation that they were a public

park, are shown to be so notorious that all of the heirs of Horace White, as also plaintiffs, must have had full notice thereof. The suit was commenced April 25, 1895.

For the appellants there was a brief by *L. F. Patten*, attorney, and *Sutherland & Nolan*, of counsel, and oral argument by *G. G. Sutherland*. They contended, *inter alia*, that there could be no dedication for public purposes by any person except by the owner and hence no dedication before entry from the government. *Bushnell v. Scott*, 21 Wis. 457; *Lawe v. Kaukauna*, 70 Wis. 306; *Lee v. Lake*, 14 Mich. 12; *Dillingham v. Fisher*, 5 Wis. 475; *Gentleman v. Soule*, 32 Ill. 271, 83 Am. Dec. 264; *Gridley v. Hopkins*, 84 Ill. 528; *Harding v. Hale*, 83 Ill. 506; *Boerner v. McKillip*, 52 Kan. 508; *Porter v. Stone*, 51 Iowa, 373; *Eureka v. Fay*, 107 Cal. 166; *Hannibal v. Draper's Heirs*, 36 Mo. 332; *Kansas City M. Co. v. Riley*, 133 Mo. 574; *Nelson v. Madison*, 3 Biss. 244; *Watkins v. Peck*, 13 N. H. 377. The words "Mechanics' Green" were not in themselves a dedication, nor is a mere blank. *New York v. Stuyvesant's Heirs*, 17 N. Y. 34; *Scott v. Des Moines*, 64 Iowa, 438; *Pella v. Scholte*, 24 Iowa, 283; 9 Am. & Eng. Ency. of Law (2d ed.), 62, note; *State v. Woodward*, 23 Vt. 92; *Att'y Gen. v. Whitney*, 137 Mass. 450; *Daniels v. Wilson*, 27 Wis. 492. An intention to dedicate is essential; without it no user will amount to dedication. *Buchanan v. Curtis*, 25 Wis. 99; *Bushnell v. Scott*, 21 Wis. 451; *Macey v. Taylor*, 19 Ill. 634; *Barteau v. West*, 23 Wis. 416; *Gardiner v. Tisdale*, 2 Wis. 153; *Ayers v. Reidel*, 84 Wis. 276; *Schmitz v. Germantown*, 31 Ill. App. 284; *Warren v. Brown*, 31 Neb. 8; *Grandville v. Jenisen*, 84 Mich. 54; *Curtis v. Keesler*, 14 Barb. 511. Death of the owner is a revocation of a proffered dedication, and acceptance after death gives the corporation no title. *People v. Kellogg*, 67 Hun, 546; *Bridges v. Wyckoff*, 67 N. Y. 132; *Wallace v. Townsend*, 43 Ohio St. 537; *Clendenin v. Maryland C. Co.* 86 Md. 80.

For the respondent there was a brief by *J. C. Rood* and *Jackson & Jackson*, and oral argument by *Mr. Rood* and *Mr. A. A. Jackson*.

DODGE, J.   In the view we have taken of one of the questions presented, it will be unnecessary to decide several other interesting ones discussed by the briefs.   It is contended by the defendant that although the Hopkins plat was decided to be invalidly executed, in *Gardiner v. Tisdale*, 2 Wis. 153, because the certificate of acknowledgment was annexed thereto, instead of being indorsed thereon, that holding has been overruled in subsequent decisions of this court. *Weisbrod v. C. & N. W. R. Co.* 18 Wis. 35; *Davis v. Fulton*, 52 Wis. 657; and *State v. Schwin*, 65 Wis. 207.   Further, that in any event the curative acts now embodied in sec. 2216*b*, Stats. 1898, have given it full validity and efficacy as a statutory dedication.   *Williams v. Milwaukee I. E. Asso.* 79 Wis. 524.   The defendant also contends, and the court below has decided, that there has been adverse, exclusive, and continuous possession, under claim of at least possessory title, for not only more than ten years, but for more than twenty years, and that the Hopkins plat, even if not valid as a statutory dedication, is a color of title, so that plaintiffs' action is barred both by the ten-year and the twenty-year statutes of limitation, which contention receives much support from the very comprehensive opinion of Judge JENKINS in *La Crosse v. Cameron*, 46 U. S. App. 722.

The findings, however, disclose that in 1838 Horace White caused to be made and published the Kelsou plat, and after his entry of the land, April 13, 1840, made conveyances with reference thereto, *with the intent to dedicate* the tract marked "Mechanics' Green" as a public park, and that, *with like intent*, he made, executed, and recorded the Hopkins plat, July 29, 1840 (which, whether or not rendered effective as a conveyance, is made admissible in evidence by its record,

by sec. 2216b, Stats. 1898), and immediately followed it
with a large number of conveyances referring to that plat,
and some of them referring specifically to Mechanics' Green,
and bounding upon it; that immediately after the making
of the Hopkins plat the public entered into possession of
Mechanics' Green, and occupied and used the same as a pub-
lic park, and that officers and residents of the town and of
the village of Beloit *accepted* the dedication of said lands as
a public park, and that the same have been publicly, openly,
and notoriously occupied, possessed, and used for such pur-
poses ever since 1840; that Horace White and his heirs knew
of such occupation and use, and never objected thereto; and
that said premises have never been assessed for taxation.
These findings are abundantly supported by the evidence.
The designation of the space as "Mechanics' Green," the
laying out of certain lots in block 54 which would be wholly
inaccessible unless Mechanics' Green were public, accom-
panied by the notorious reputation of a dedication, are suffi-
cient of themselves to support the finding of *animus dedicandi*
in publishing the Kelsou plat and selling lots according to
it,— which finding, by the way, is not excepted to.   When
this evidence is supplemented, however, by the subsequent
acts of Dr. White, namely, repeating his plat in 1840 with
the same features indicating a purpose to dedicate, and with-
out saying or doing anything to repudiate the general un-
derstanding and repute of such purpose, of which he must
have had knowledge, and permitting, without protest, as-
sumption of control by the public, and expenditure of labor
and expense by the community in fitting the ground for
public use, no reasonable doubt remains that he intended to
dedicate at the time of making the Kelsou plat, and at the
time of making conveyance under it.   Nor, in the light of
those acts, can there be any doubt that such intention con-
tinued, and was again declared by the attempt to legally
record the Hopkins plat in 1840.   No less abundant and

Bates and another vs. The City of Beloit.

convincing is the evidence of acceptance. The grounds were used from the earliest times by the public, which in those days of abundant uninclosed premises might not alone be conclusive, but that use was accompanied by a general understanding and reputation that this particular space had been donated for park purposes. In 1843 the community cleared off the ground, and held a Fourth of July celebration there, and in the same year used it as a place of meeting for highway commissioners. It is difficult to conceive any more cogent acts possible to a community before the organization of any municipal government. Such acts have been followed by continued user by the public ever since, and by expenditure of money by the public authorities in improving the premises for such use, in inclosing the same, and resisting invasion thereof.

To the facts thus found to exist, the rules of law applicable are elementary. The deliberate appropriation by the owner of land for any general and public uses, by some act or conduct which evinces such intent, constitutes a dedication *in pais*,— absolute when followed by user or acceptance. *Gardiner v. Tisdale*, 2 Wis. 153, 187; *Weisbrod v. C. & N. W. R. Co.* 21 Wis. 602, 609; *Bartlett v. Beardmore*, 77 Wis. 356, 364; *Cincinnati v. White's Lessee*, 6 Pet. 431; *Abbott v. Cottage City*, 143 Mass. 521; *Attorney General v. Abbott*, 154 Mass. 323, 328; 2 Dillon, Mun. Corp. (4th ed.), § 630 *et seq.;* Elliott, Roads & S. 90 *et seq.* Such appropriation, user, and acceptance are all shown in this case, and we have no hesitation in holding that the tract in question has been dedicated for use as a public park, and that defendant lawfully holds it in trust for such use, as the circuit court decided.

*By the Court.*— Judgment affirmed.