# CASES DETERMINED

# January Term, 1910.

---

THORNDIKE and others, Appellants, vs. MILWAUKEE AUDITO-
RIUM COMPANY and another, Respondents.

*November 16, 1909—May 24, 1910.*

*Platting lands: Public squares: Dedication: Interest left in dedicator:
Curative statute: Trusts: Diversion or misuser of property: Who
may maintain action: Taxpayers' action: Pleading.*

1. A plat duly acknowledged and recorded under the act of the terri-
tory of Michigan of April 12, 1827, conveys the fee in trust of a
public square designated on such plat, and leaves no present
interest in the dedicator or in his heirs or grantees in such
land.

2. A statutory dedication by such platting has the legal effect of a
conveyance in fee in trust for the public.

3. A defective statutory dedication, if accepted by the public, is good
as a common-law dedication.

4. A common-law dedication of land for public uses conveys an ease-
ment in the public sufficient for such purposes, but leaves the
fee in the dedicator.

5. Under sec. 2263, R. S. 1878, a statutory dedication which con-
formed to the statute or which, failing so to conform in minor
particulars, was corrected by a curative statute (ch. 348, Laws
of 1883), passed the fee in trust for the public to the town, city,
or village and left no present interest in the dedicator or his
heirs in case of a public square.

6. It is the settled law of this state that in the case of a road or
street, whether acquired by condemnation, by conveyance, by
common-law dedication, or by statutory dedication, the city,
town, or village takes only an easement for highway purposes,
while the fee is held by the abutting owners. This brings all

roads and streets within an uniform rule and has become a rule of property; but this rule will not be extended to public squares which have become such by statutory dedication.

7. Public squares created by statutory dedication under sec. 2263, Stats. (1898), and accepted by the public belong to the city in fee in trust for the public, and the dedicator or his heirs have no present interest in the land. *Milwaukee v. M. & B. R. Co.* 7 Wis. 85, so far as it holds to the contrary, overruled.

8. Where the plaintiffs have no interest differing from that of any other member of the public in preventing misuser of such public square, they cannot maintain an action in their own right as heirs of the dedicator.

9. The misuser or diversion of trust property does not operate to forfeit the title of the trustee, in the absence of any such express condition in the conveyance to the trustee.

10. The remedy in such case is a suit in equity by the proper party plaintiff to restrain the unlawful diversion or the misuser of the trust property. Public trusts like those created by the statutes referred to must be enforced in the same manner and by the same persons as are entitled to enforce charitable trusts.

11. One who has no interest differing from that of any other member of the public in preventing the misuser of such trust property cannot maintain a suit in his own right for the purpose of preventing misuser.

12. Where a complaint contains no averment that the action is brought in behalf of the plaintiffs and others similarly situated with respect to the subject matter of the action, and fails to show that the right sought to be vindicated is a public right to which the whole body of the taxpayers only are entitled, but on the other hand sets forth the ownership of the land in question and its platting by the ancestor of the plaintiffs, traces the title from such ancestor, and then avers the diversion or misuser of the trust property apparently as a private wrong to plaintiffs, the action will not be sustained as a class action or an action in behalf of the public, the beneficiaries under the trust mentioned.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

*Frank M. Hoyt,* for the appellants, contended, *inter alia,* that the appellants as heirs of the dedicator could maintain this action: *Warren v. Lyons City,* 22 Iowa, 351; *Rowzee v. Pierce,* 75 Miss. 846, 23 South. 307. A resident taxpayer could maintain the action. *McIntyre v. Board of Comm'rs,*

15 Colo. App. 78, 61 Pac. 237; *Crampton v. Zabriskie,* 101 U. S. 601; *Davenport v. Buffington,* 97 Fed. 234; 2 Dill. Mun. Corp. (4th ed.) §§ 653, 914. A municipality cannot use, for purposes foreign to the dedication, lands dedicated for a public park. *Riverside v. MacLain,* 210 Ill. 308, 71 N. E. 408; *Sachs v. Trustees,* 79 Ill. App. 439; *Board of Ed. v. Kansas City,* 62 Kan. 374, 63 Pac. 600; *Portland & W. V. R. Co. v. Portland,* 14 Oreg. 188, 12 Pac. 265; *St. Paul v. C., M. & St. P. R. Co.* 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458; *Price v. Thompson,* 48 Mo. 361; *Fessler v. Union,* 67 N. J. Eq. 14, 56 Atl. 272, affirmed 68 N. J. Eq. 657, 60 Atl. 1134. The objection that the complaint was not brought on behalf of plaintiffs and all taxpayers similarly situated was waived by failure to specifically demur on that ground. *State v. Tuttle,* 53 Wis. 45, 9 N. W. 791; *Wood v. Union Gospel C. B. Asso.* 63 Wis. 9, 22 N. W. 756; *Manseau v. Mueller,* 45 Wis. 430; *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417. Public property cannot be used for the purposes here sought. *Att'y Gen. v. Eau Claire,* 37 Wis. 400; *Wisconsin K. Inst. v. Milwaukee Co.* 95 Wis. 153, 70 N. W. 68; *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067; *State ex rel. Consolidated S. Co. v. Houser,* 125 Wis. 256, 104 N. W. 77; *Brodhead v. Milwaukee,* 19 Wis. 624; *Weeks v. Milwaukee,* 10 Wis. 242; *Foster v. Kenosha,* 12 Wis. 616. The city acquired no right by adverse possession because the land had been dedicated to the use of the public. *Childs v. Nelson,* 69 Wis. 125, 33 N. W. 587; *Nicolai v. Davis,* 91 Wis. 370, 64 N. W. 1001; *Madison v. Mayers,* 97 Wis. 399, 73 N. W. 43; *Ashland v. C. & N. W. R. Co.* 105 Wis. 398, 80 N. W. 1101.

For the respondent *Milwaukee Auditorium Company* there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles, Jr.,* of counsel, and oral argument by *J. V. Quarles, Jr.*

For the respondent *City of Milwaukee* there was a brief

by *John T. Kelly,* city attorney, and *Walter H. Bender,* assistant city attorney, of counsel, and oral argument by *Mr. Bender.*

On the part of the respondents the following authorities, among others, were cited. As negativing the right of the plaintiffs to maintain this suit as heirs of the dedicator: *Strong v. Doty,* 32 Wis. 381; *Mills v. Evansville Sem.* 47 Wis. 354, 2 N. W. 550; *Donnelly v. Eastes,* 94 Wis. 390, 396, 69 N. W. 157; *Greene v. O'Connor,* 18 R. I. 56, 25 Atl. 692, 19 L. R. A. 262, and note; *Adams v. First Baptist Church,* 148 Mich. 140, 111 N. W. 757, 11 L. R. A. N. S. 509, and note; *Barclay v. Howell's Lessee,* 6 Pet. 498; *Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48 N. W. 665; *U. S. v. Ill. Cent. R. Co.* 154 U. S. 225, 14 Sup. Ct. 1015; *Zettel v. West Bend,* 79 Wis. 316, 48 N. W. 379. To the point that appellants, not being specially injured or damaged, cannot maintain this suit as a class action: *Manson v. South-Bound R. Co.* 64 S. C. 120, 41 S. E. 832; 2 High, Injunctions (4th ed.) § 1301; *Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48 N. W. 665; *Bell v. Platteville,* 71 Wis. 139, 36 N. W. 831; *Stone v. Oconomowoc,* 71 Wis. 155, 36 N. W. 829. That the legislature, lawfully representing the public beneficiary, could authorize a change of the use where no property was taken and no private rights infringed: *Prince v. Crocker,* 166 Mass. 347, 44 N. E. 446; *Charles River Bridge v. Warren Bridge,* 11 Pet. 420; *Brooklyn Park Comm'rs v. Armstrong,* 45 N. Y. 234; *Clark v. Providence,* 16 R. I. 337, 15 Atl. 763; 2 Dill. Mun. Corp. (4th ed.) § 651.

TIMLIN, J. The complaint in this action averred that the plaintiffs are the sole heirs at law of Byron Kilbourn, who died testate on December 16, 1870, leaving surviving him his widow, Henrietta, and his son, Byron H. Kilbourn. His will, which was duly admitted to probate, after devising

and bequeathing a life estate in certain real property and
some personal property to his widow, devised and bequeathed
all the rest, residue, and remainder of his estate one half to
Byron H. Kilbourn and the other half to I. A. Lapham in
trust for the plaintiffs.     In the year 1897 Byron H. Kil-
bourn died intestate leaving surviving him the plaintiffs, his
only heirs at law.     Henrietta died, and the trust to I. A.
Lapham has long since been executed and the property which
was the subject of that trust conveyed to the plaintiffs.     The
plaintiffs also averred that they own two described lots within
the limits of the plat hereinafter mentioned and situate a
short distance from the public square in question, but it does
not appear that these lots abut on that square or on the streets
in front of that square.     One of the plaintiffs is a resident
of *Milwaukee*.     There is no averment that the suit is brought
in behalf of the taxpayers of the city, no averment that either
of the plaintiffs is a taxpayer, and that fact could only be
deduced from the averment that plaintiffs own real estate in
the city of *Milwaukee*.     This averment is, however, inserted
in the complaint for a wholly different purpose, namely, to
show the interest of the plaintiffs in preserving the original
dedication by reason of their ownership of lots in the plat as
well as by force of their succession to the rights of Byron
Kilbourn through their father and through execution of the
Lapham trust.     It is averred that on October 8, 1835, Byron
Kilbourn, being the sole owner in fee simple of fractional
government lots 3 and 4 in the N. E. ¼ of section 29, town-
ship 7 N., of range 22 E., in Milwaukee county, made and
recorded a plat of these and other lands belonging to him in
accordance with the act of the territorial legislature of Mich-
igan approved April 12, 1827.     In and by said plat he dedi-
cated to the public a described square, space, or tract of land
420 feet in length by 150 feet in width, with the express
proviso and condition duly written into and part of said plat
certificate and dedication that said space or square or tract

was to be left vacant as public ground and no building was ever to be erected thereon by any body corporate or politic, except that in case of the town becoming incorporated the town authorities might erect a market house on such space. This dedication was duly accepted by "the public authorities."

The *Milwaukee Auditorium Company* has taken steps under ch. 426, Laws of 1905, to join with the city of *Milwaukee* in the erection and maintenance of an auditorium or music hall, each to pay half the money necessary for that purpose. The city raises its share by sale of its bonds which it has issued for this purpose to the amount of $250,000, and the *Auditorium Company* its share from the proceeds of subscriptions to its shares of capital stock. Plans and specifications have been prepared for a building 400 feet in length by 300 feet in width and 150 feet in height, with one or more auditoriums, offices, classrooms, studios, music halls, music rooms, gymnasiums, lodge rooms, and accommodations for industrial, commercial, scientific, educational, fraternal, and musical organizations, and labor associations desiring to use the same for kindred purposes, and defendants intend to operate and manage the building in the manner specified in ch. 426, *supra.* The defendants give out and threaten to, and are about to, proceed with the erection of this building on the public square or space above mentioned and upon a strip of land adjoining this on the west owned by the city. The building so proposed to be erected will completely cover the dedicated square or space, its erection and maintenance amount to an appropriation of the public square to private gain and the diversion thereof to a purpose foreign to that for which the land was dedicated by the plaintiffs' said ancestor. Prayer that the defendants be enjoined from erecting this building on the public square and for general relief.

The defendants answered jointly, denying that the use

proposed was foreign to the purposes for which the land was dedicated, and averring, further, that from 1867 to 1881 this space in question was let or leased as a site for market buildings. The latter buildings were demolished in 1881, and the whole square covered by a building used for the purposes of an industrial exposition owned by a private corporation which held from the city of *Milwaukee* a lease of the ground, and this use continued until June, 1905, when the exposition building was destroyed by fire and not rebuilt. This lease to the exposition company was authorized by ch. 461, Laws of 1885. A claim of adverse possession is set up and a denial that the plaintiffs are wronged or injured or damaged by the acts in question.

The cause was tried and the court made findings supporting the averments of the complaint, except as to the right of the plaintiffs to maintain the action, and further to the effect that the square or space in question remained wholly vacant and unoccupied from its dedication down to 1867 or 1868, during which time it was commonly known as "the Second Ward Park." From that time for about three years it was leased by the city to be built upon and used as a skating rink and was so built upon and used for three years, but the lease from the city covering the period last mentioned provided that the skating rink should be placed far enough back from the street to admit of the erection of stalls and booths for market gardeners. However, no such stalls or booths were erected or used during these three years. Thereafter and up to 1876 the space was used for a public market under a ground lease from the city to the owner of the building thereon and leases of booths and stalls from the lessee to the market men or dealers. In 1876 the city leased the space in question to a corporation called the West Side Market Association for the term of five years and five months at a nominal rental, and this corporation used the premises for market purposes as well as for theatrical and other amuse-

ments until 1880.   At this date a corporation called the
Milwaukee Industrial Exposition was organized for the pur-
pose of constructing an industrial exposition building and
operating the same.   To this corporation the city of *Milwau-
kee* on October 12, 1880, leased the space in question with
the adjoining land owned by the city for the term of fifty
years at an annual rental of $1, said premises to be used
only for the purposes of an industrial exposition in the city
of *Milwaukee* as contemplated in the articles of association
of the lessee, and for such other purposes of a public nature
as the directors of said exposition company should approve.
This lease further provided that the lessee should erect a
building on said premises to cost not less than $150,000, and,
in case of the destruction of this building by fire, if the same
was not rebuilt within two years the lease should cease and
determine.

Ch. 461, Laws of 1885, expressly authorized the city of
*Milwaukee* to lease this square or space for the purpose of
maintaining a building thereon to be used for annual indus-
trial expositions and for a public museum, and ratified and
confirmed the lease already made.   This exposition company
went into possession under said lease, erected the required
building, and used it from 1881 to 1905 for the purpose of
holding annual expositions of machinery, merchandise, and
other industrial products, and in the intervals between such
annual expositions for holding conventions, athletic exhibi-
tions, concerts, political meetings, a skating rink, and for
various amusements, and the city used part of the building
for a public museum and also for an art gallery for some part
of this time.   There were no stalls or booths in this building,
and no part of the premises in question was used for market
purposes since 1880.   June 4, 1905, the exposition building
was totally destroyed by fire and the lessee did not rebuild.
The project of building a public hall of large capacity was
under discussion in *Milwaukee* in 1904, and a certain *quasi-*

public association procured an option from the plaintiffs to build on the space in question in consideration of the payment to plaintiffs of $15,000. Nothing further was done under this option. In 1906 the *Milwaukee Auditorium Company* was organized as a corporation for the purpose of carrying out the powers given by ch. 426, Laws of 1905, its capital stock fixed at 25,000 shares of $10 each, and its shares were subscribed for by 2,700 citizens of *Milwaukee,* upon which subscriptions $208,000 had been paid in. The common council of *Milwaukee,* upon vote of the electors of the city, issued the corporate bonds of the city as stated in the complaint and raised money. The defendants proceeded with the construction of the building, and had up to the time of trial expended $223,000 for that purpose. The building so in course of construction will cost about $500,000, and is mainly a public hall or auditorium capable of accommodating from 7,500 to 10,000 persons. The easterly part of this building, which rests upon the dedicated space in question, consists of an entrance to the auditorium sixty feet in width, also offices, corridors, toilet, and other rooms, and contains in the basement a large room 170 feet long and 60 feet wide, called "Market Hall." North of this is a storage room 112 feet long and 73 feet wide; on the south end, rooms designated kitchens. On the first floor there is what is termed a banquet hall, 88 feet long and 60 feet wide; north of this on the same floor a music hall 92 feet long and 60 feet wide, capable of seating from 1,000 to 1,500 people; and on the second floor of this part of the building are rooms for the administrative officers of the board in charge and for other purposes. The city leased all this land to its codefendant for ninety-nine years, but afterward and by mutual consent of the parties thereto canceled this lease, and the indication of part of the basement space as "Market Hall" was apparently an afterthought, suggested by the exigencies of this litigation. There is no present necessity or demand for a public

market place in *Milwaukee,* but there is such necessity and demand for a public hall of large seating capacity and for a building devoted to the purposes for which this auditorium building is adapted, and its erection will prove a public benefit to the city and promote the welfare and public interests of the citizens.

It is then found that the city of *Milwaukee* and its lessee has openly and notoriously, under claim of right, devoted the space or square in question to purposes foreign to the purposes of a market house and public square since the year 1868, and has used said premises for public purposes of various kinds since said date, and has leased the same and collected rent therefrom, and has used said premises for public purposes other than those named in the certificate of dedication as more particularly described in the previous findings since the year 1880, and such use has been continuous, uninterrupted, adverse, notorious, and under claim of right.

It is said by the appellants the two younger of the plaintiffs reached the age of twenty-one years on February 20, 1888. Byron H. Kilbourn, however, lived until 1897, and the legal title to the remainder of the property was vested in the trustee, Lapham. The trial court from these facts derived the following conclusions of law: (1) That the plaintiffs are not entitled to maintain this action. (2) That the legislature had the power to and did authorize the diversion of the use of the premises in question from the purposes for which they were originally dedicated to those for which they are intended by the defendants. (3) That the use to which this square is proposed to be diverted is a public use. (4) That if the plaintiffs had a right to maintain this action such right would have been barred by subd. 4, sec. 4221, Stats. (1898). (5) That the plaintiffs by laches have lost any right of action they may have had. (6) That defendants are entitled to judgment.

We must of course be able to find that the plaintiffs have a cause of action stated in their complaint and existing in their favor either accruing to them directly or as heirs or representatives of Byron Kilbourn, or as lotowners in this plat, or as representatives of a class consisting of the public or the taxpayers, before this disposition of the case by the court below can be reversed. If this question is resolved adversely to the plaintiffs, we are not called upon to determine any other question in the case.

The legislative council of the territory of Michigan on September 6, 1834, laid out, and on August 25, 1835, authorized, the organization of the county of Milwaukee. On October 8, 1835, Byron Kilbourn platted the land in question. On April 20, 1836, the territory of Wisconsin was by act of Congress set off from the territory of Michigan and established as a separate territory, and this included the county of Milwaukee and the lands in question. On October 8, 1835, the following statute relative to platted town sites was in force in the territory of Michigan (act of April 12, 1827):

"Sec. 2. That such maps or plats as are required by this act to be recorded, shall particularly set forth and describe all the public grounds within such town, by its boundaries, courses and extent, and whether it be intended for streets, alleys, commons or other public uses, and all the lots intended for sale, by progressive numbers, and their precise length and width; and the maps made and acknowledged before a justice of the peace, a justice of the county court of the proper county where the town lies, or before a judge of the supreme court, and certified under the hand and seal of the judge or justice taking such acknowledgment, and recorded, shall be deemed a sufficient conveyance, to vest the fee of such parcels of land as are therein expressed, named or intended to be for public uses, in the county in which such town lies, in trust, to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever." Laws of 1827, p. 278.

Beside the streets and alleys, numbered lots and blocks, this plat showed four vacant spaces, and the certificate accompanying the plat stated:

"The four spaces marked 'public' are of the dimensions represented by the lines on the plat and are to be left vacant as public grounds, no buildings ever to be erected on them by any body corporate or politic, except in the case of the town being incorporated the town authorities may erect a market house upon either of those spaces lying in front of blocks Nos. 36, 52, or 76, but no building shall be erected on the space in front of block No. 24."

This suit relates to the space in front of block No. 52.

The record presents rather an anomalous condition. The second finding of the circuit court, not excepted to by appellants, contains the following:

"That such plat was duly made, acknowledged, and recorded by said Byron Kilbourn in accordance with the laws of the territory of Michigan (which territory embraced what is now the state of Wisconsin), to wit, 'An act to provide for the recording of town plats, approved April 12, 1827.'"

At the same time there was received in evidence the decision and opinion of the court and findings of fact in the case of *Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48 N. W. 665, relating to the same plat and title. The case last cited determines that the Kilbourn plat was not duly acknowledged, but became effective as a statutory dedication by virtue of the curative act (ch. 348, Laws of 1883), and that a grantee of Byron Kilbourn had no interest in this public square. Considering the case from the viewpoint that the plat was duly acknowledged and recorded under the laws of Michigan, we have a statute giving the plat the legal effect of a conveyance in fee by the dedicator in trust and not the grant of a mere easement. The conveyance of a fee in trust leaves no present interest in the grantor or his heirs. *Strong v. Doty,* 32 Wis. 381. This effect was given to a statutory dedication under a similar statute in *U. S. v. Ill.*

*Cent. R. Co.* 154 U. S. 225, 14 Sup. Ct. 1015; *Hunter v. Middleton,* 13 Ill. 50; *Canal Trustees v. Havens,* 11 Ill. 554; *Matthiessen & H. Zinc Co. v. La Salle,* 117 Ill. 411, 2 N. E. 406, 8 N. E. 81; *Board of Ed. v. Edson,* 18 Ohio St. 221; *Young v. Board of Comm'rs,* 51 Fed. 585; *S. C.* 59 Fed. 96; *Union E. Co. v. Kansas City S. B. R. Co.* 135 Mo. 353, 36 S. W. 1071. The conveyance of the fee, whether a fee-simple absolute or a limited fee to the grantee for his use or in trust for others, leaves no present interest in the grantor. Misuser or wrongful diversion of the property does not terminate or forfeit the title of the trustee, nor is it ground for ejectment in the absence of a stipulation in the conveyance forfeiting title for such misuser or diversion. 2 Dill. Mun. Corp. (4th ed.) § 653, and cases; *Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48 N. W. 665; *Parker v. St. Paul,* 47 Minn. 317, 50 N. W. 247; *Goode v. St. Louis,* 113 Mo. 257, 20 S. W. 1048; *Barclay v. Howell's Lessee,* 6 Pet. 498; *Archer v. Salinas,* 93 Cal. 43, 28 Pac. 839, 16 L. R. A. 145; *Still v. Mayor, etc.* 27 Ga. 502; *Plumer v. Johnston,* 63 Mich. 165, 29 N. W. 687. The remedy for misuser or wrongful diversion by the city is in equity by injunction, and under similar statutes the right to this remedy has been held to be in the city (*Jacksonville v. Jacksonville R. Co.* 67 Ill. 540); in the general property owners in the plat (*Price v. Thompson,* 48 Mo. 361); in the owner of a lot abutting on the public square (*Comm'rs v. Lathrop,* 9 Kan. 453); in citizens, lotowners, and original dedicators in a class action (*Rowzee v. Pierce,* 75 Miss. 846, 23 South. 307); in one of the original dedicators who also was the owner of lots fronting on the public square (*Warren v. Lyons City,* 22 Iowa, 351). We consider this question, however, settled in this state against the right of the appellants to maintain this action as heirs of the dedicator by the cases of *Strong v. Doty,* 32 Wis. 381, and *Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48 N. W. 665, which seem to be in line

with *U. S. v. Ill. Cent. R. Co.* 154 U. S. 225, 14 Sup. Ct.
1015; *Armstrong v. Portsmouth B. Co.* 57 Kan. 62, 45 Pac.
67; and *Lackland v. Walker,* 151 Mo. 210, 52 S. W. 414.
Considering that the original dedication was insufficient as a
statutory dedication as ruled in *Williams v. Milwaukee Ind.
Expo. Asso., supra,* and cases there cited, and only took effect
as a statutory dedication upon the enactment of the curative
statute (ch. 348, Laws of 1883), the final result is the same.
In that view of this case, from October 8, 1835, up to the
enactment of the curative statute in 1883 this plat presented
the problem of a defective statutory dedication continually
tendered to the public and never withdrawn. It is well set-
tled that a defective statutory dedication, if accepted by the
public, will be good as a common-law dedication. *Gardiner
v. Tisdale,* 2 Wis. 153; 9 Am. & Eng. Ency. of Law (2d ed.)
36, and cases. Open squares in towns are as much within
the principles of dedication as highways (*Abbott v. Cottage
City,* 143 Mass. 521, 10 N. E. 325), and acceptance thereof
may be indicated by common user (Id.). The doctrine of
dedication to public uses has always been extended and applied
to public squares in cities and villages, these being regarded at
common law as easements for the benefit of the public, and
the fact of dedication may be established in the same manner
as in the case of highways and streets. 2 Dill. Mun. Corp.
(4th ed.) § 644, and cases in note; *Bates v. Beloit,* 103 Wis.
90, 78 N. W. 1102; *Lins v. Seefeld,* 126 Wis. 610, 105 N.
W. 917. Under this hypothesis, up to the time of the pas-
sage of the curative act the fee remained in the dedicator or
his successor in interest, subject to an easement in favor of
the public, as it always does in case of a common-law dedica-
tion. 13 Cyc. 486, and cases. Notwithstanding the more
limited common-law dedication to the public had prior to
that time taken effect, the enactment of the curative statute
in 1883 caused the Kilbourn plat to take effect as a statutory
dedication either under the Michigan statute heretofore

·quoted, or under sec. 2263, R. S. 1878, which was the statute
·of this state then in force. *Williams v. Milwaukee Ind.
Expo. Asso.* 79 Wis. 524, 48 N. W. 665. This latter statute
·also gives the plat the legal effect of a conveyance in fee—
·an effect beyond that of a common-law dedication. The
·trustee named in these statutes is different, but the title con-
·veyed in trust is not.

By a long line of decisions in this state with reference to
·streets and roads it has become the settled law of this
state that in the case of a road or street, whether acquired
by condemnation, conveyance, by common-law dedication or
·by statutory dedication, the city, town, or village takes only
·an easement for highway purposes, while the fee is held by
the abutting landowner. This brings all roads and 'streets
within an uniform rule; but whether the ruling was origi-
nally correct as regards statutory dedication by plat under
·the statutes quoted is doubtful. However this may be, the
rule has been so often applied and is of such long standing
that it has become a rule of property with reference to roads
and streets and cannot now be departed from. *Gardiner v.
Tisdale,* 2 Wis. 153; *Taylor. v. C., M. & St. P. R. Co.* 83 Wis.
636, 53 N. W. 853; *Weisbrod v. C. & N. W. R. Co.* 21 Wis.
·602; *S. C.* 18 Wis. 35; *S. C.* 20 Wis. 419; *Daniels v. Wil-
son,* 27 Wis. 492; *Pettibone v. Hamilton,* 40 Wis. 402; *Madi-
son v. Mayers,* 97 Wis. 399, 73 N. W. 43. But with respect
to public squares created by statutory dedication, it was held
in *Williams v. Smith,* 22 Wis. 594, that the city of Janes-
ville could join with the owners of lots abutting upon a pub-
lic square in a suit to prevent the diversion of the use of a
square from that to which it was originally dedicated. In
*Williams v. Milwaukee Ind. Expo. Asso.* 79 Wis. 524, 48
N. W. 665, it was said with reference to the public square
here in question that one to whom Byron Kilbourn, after
filing his defective plat, granted an undivided interest in all
the platted land, but who began a suit after the enactment of

the curative statute, had no interest in the square in question. But in *Milwaukee v. M. & B. R. Co.* 7 Wis. 85, it was held that the city had no such interest in a public square as would enable it to maintain an action to enjoin the railroad company defendant from constructing its railroad in such square.

This condition of the precedents in this state with reference to public squares under a statutory dedication leaves this court free to re-examine and construe that statute so far as the same relates to public squares. Upon the face of these statutes it is very clear that, as soon as the statutory dedication took effect, Byron Kilbourn, or those claiming under him, parted with the title in fee to the municipality. When the municipality took the fee in trust for the public, this conveyance left no residue of title or interest in the dedicator or those claiming under him by virtue of which they could claim any present interest in the dedicated land. So far as the case relates to public squares created by statutory dedication, *Milwaukee v. M. & B. R. Co.* 7 Wis. 85, is overruled. These trusts for the benefit of the public come under the law relative to charitable trusts, so far at least as the enforcement of the trust is concerned. 1 Beach, Trusts & Trustees, § 317, and cases in note; *Armstrong v. Portsmouth B. Co.* 57 Kan. 62, 45 Pac. 67; *Lackland v. Walker,* 151 Mo. 210, 52 S. W. 414. This is a very ancient rule of the common law, and the right of the grantor in such conveyance, if it existed, would be a mere right of action and not an interest in the property. When we consider that such trusts may last for centuries, we get a suggestion of at least one of the reasons for this rule so far as public or charitable trusts are concerned. But the rule itself is firmly established. If the plaintiffs have no interest differing from that of any other member of the public in preventing the misuser of this property, they cannot maintain an action in their own right as heirs of the dedicator. We are convinced that the plaintiffs have no present interest in this public square, special or pe-

culiar to them, and differing in nature from the interest of other members of the public.    It remains to be seen whether the present action can be sustained as a class action or a taxpayers' suit.    We do not intend to affirm or deny, in this opinion, the right of the taxpayers or lotowners as a class to restrain this use of the property in question in a suit brought by one or more in behalf of himself and all others similarly situated.    We hold that the complaint in this action does not present such a case.

The general rule requires an express averment in the complaint to the effect that the action is brought in behalf of the plaintiffs and others similarly situate with respect to the subject matter of the action.    *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417.    This averment may in some cases be omitted, "providing the complaint clearly shows upon its face that the right sought to be vindicated is a public right and the primary relief demanded is relief to which the whole body of taxpayers *only* are entitled."    This the complaint fails to do.    It carefully sets forth the ownership of the land in question and its platting by the ancestor of plaintiffs, and then traces plaintiffs' title from said ancestor.    It sets forth that the plaintiffs own two lots in this plat, which lots are described, and avers that these lots are but a short distance from the square in question, and then the threat and intention to erect and maintain the auditorium building.    This is followed by an averment that this erection and maintenance "amount to an appropriation of said land to private gain and to a purpose entirely foreign to that for which said land was so dedicated to the public by plaintiffs' ancestor as aforesaid."    The relief asked is that the defendants be enjoined from erecting or constructing on said land so dedicated to the public the said building or any building except a market house in accordance with the terms and conditions of such dedication.    This is followed by a prayer for general relief.

From this synopsis of the complaint it must be obvious

that the main purpose of the pleader was to proceed in behalf of the plaintiffs as heirs of Byron Kilbourn having an interest in the dedicated land.    This is an action which might be maintained by the dedicator or his heirs under a common-law dedication and in other cases where they retained an interest in the land.    *Gardiner v. Tisdale,* 2 Wis. 153; *Weisbrod v. C. & N. W. R. Co.* 21 Wis. 602; *Freedom v. Norris,* 128 Ind. 377, 27 N. E. 869.    Merely by virtue of owning two lots in this plat not abutting on the square in question the plaintiffs showed no special or peculiar interest in restraining the alleged public wrong.    *Zettel v. West Bend,* 79 Wis. 316, 48 N. W. 379; *Liermann v. Milwaukee,* 132 Wis. 628, 113 N. W. 65.    The plaintiffs have shown no right of action in themselves to restrain the alleged misuser, and, the action not having been brought in behalf of a class who might possess that right, it follows that the judgment of the circuit court must be affirmed.    We do not reach or pass upon any other matter found by the circuit court.

*By the Court.*—Judgment affirmed.

SIEBECKER, J., dissents as to the construction of the complaint.